728 F.2d 1244
 Linda Jean HUNT, Plaintiff-Appellant,
v.
ERIE INSURANCE GROUP, a corporation; Erie Insurance
Exchange, a corporation; Erie Insurance Company, a
corporation; Erie Indemnity Company, a corporation; Does
One through Ten, Defendants-Appellees.
 No. 83-2215.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 17, 1984.
Decided March 20, 1984.
 
 Joseph I. Burgess, Fabris & Ring, San Francisco, Cal., for plaintiff-appellant.
 Kevin J. Dunne, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, SCHROEDER, and ALARCON, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 The issue before this court is whether an East Coast insurance company has purposefully derived any benefit from activities relating to the State of California, so that personal jurisdiction can be asserted over the insurer in a California forum. Hunt, a third party beneficiary to a "no-fault" insurance policy, contends the insurer has the requisite minimum contacts with California. The district court disagreed and concluded that to exercise personal jurisdiction would violate the insurer's right to due process. We affirm.
 
 I.
 
 2
 The underlying action arose out of an automobile accident that occurred near Vail, Colorado, when an automobile operated by a member of the Rebottini family rear-ended a semi-truck trailer. Linda Jean Hunt, a passenger in the Rebottini vehicle, was rendered a quadriplegic as a result of the accident. Hunt was on a summer break from her college in Virginia and en route to visit her mother in California. Hunt had lived with her mother in Virginia before starting college. Her mother then moved to California.
 
 
 3
 Hunt was hospitalized in Colorado for several weeks. During this time, a dispute arose with the Rebottinis' insurer, Erie Insurance Group, Erie Insurance Exchange, Erie Insurance Company and Erie Indemnity Company ["Erie"], over the coverage afforded Hunt by the Rebottinis' "no-fault" insurance policy. Hunt contended that, as a third party beneficiary of the policy, she was entitled to unlimited coverage for the costs of her medical care. Erie contended its liability was limited to $25,000 for Hunt's medical expenses and another $25,000 for her rehabilitation costs.
 
 
 4
 Hunt was unable to afford rehabilitative treatment in Colorado, because the State's only federally certified spinal cord rehabilitation center is a private institution. Her mother therefore arranged to have Hunt transferred to a rehabilitation center near her mother's residence in California, where California's Medi-Cal program would pay all Hunt's expenses. Since that time, Hunt has been receiving substantial public assistance for her medical needs from the State of California and the County of Alameda. Hunt received $75,000 from Erie ten months after she first endeavored to receive benefits under the "no-fault" policy.
 
 
 5
 Erie mailed its refusal to assume unlimited liability for Hunt's medical care to Hunt's attorney in California. Dissatisfied with the amount Erie was willing to pay, Hunt brought suit in California state court for breach of contract, bad faith, breach of fiduciary duties, unfair practices, breach of statutory duties and declaratory relief. Erie removed the action to federal court on diversity grounds and moved to dismiss for lack of personal jurisdiction.
 
 
 6
 Erie is an East Coast regional property, casualty, and multi-line insurance company, admitted to operate and operating in Pennsylvania, Maryland, Virginia, West Virginia, Ohio, Indiana, and the District of Columbia. Erie has a limited license to do business in Connecticut, Rhode Island and Maine, but does not actively conduct business in those states. Erie is not licensed to do business in California, and is not registered with the California Department of Insurance. Erie has no offices, claims offices, claims agents, underwriters, officers or adjustors located in California, and carries on no business with California residents. The Rebottinis are Pennsylvania residents and entered into the insurance contract with Erie in Pennsylvania.
 
 
 7
 On the basis of all the facts set forth above, the district court concluded that Hunt had failed to make a prima facie showing of personal jurisdiction over Erie, and granted Erie's motion to dismiss. Hunt appeals.
 
 II.
 
 8
 Whether the district court has personal jurisdiction over Erie is determined by the law of the forum state. Forsythe v. Overmyer, 576 F.2d 779, 782 (9th Cir.), cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). The applicable statute is section 410.10 of the California Code of Civil Procedure, which permits California courts to "exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." This language has been interpreted to confer jurisdiction which is coextensive with that permitted by United States Supreme Court decisions defining the limits of federal due process. Data Disc, Inc. v. Systems Technology Associates, 557 F.2d 1280, 1286 (9th Cir.1977).
 
 
 9
 International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), establishes that for personal jurisdiction to lie, "due process requires ... a defendant ... [to] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Minimum contacts may give rise to "general" or "limited" personal jurisdiction. General jurisdiction arises when a nonresident defendant's activities in the forum are so substantial and continuous that due process does not require a connection between the cause of action pleaded and the nature of the defendant's activities in the state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446-47, 72 S.Ct. 413, 418-19, 96 L.Ed. 485 (1952). Erie has clearly not engaged in any substantial activity in California that would confer general jurisdiction on the court. Therefore, the district court's order can only be reversed if limited in personam jurisdiction has been established. Whether this type of jurisdiction is present "turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." Data Disc, 557 F.2d at 1287.
 
 III.
 
 10
 Hunt argues that subjecting Erie to jurisdiction in California comports with notions of fair play and substantial justice because the Rebottinis' policy covers accidents occurring anywhere within the United States, and the policy "does not specify the place where the benefits will be paid." Hunt asserts that if there are states where Erie wished not to be sued, Erie should have so structured its policy. We are told that "[t]he promise follows the claimant wherever the claimant goes, since the policy does not provide otherwise." Thus, it is Hunt's view that jurisdiction will lie wherever an injured claimant's need for medical care exists.
 
 
 11
 The test for limited jurisdiction, however, does not sweep so broadly, nor does it focus on what the defendant has failed to do within a state. We have set forth the requirements of limited in personam jurisdiction as follows:
 
 
 12
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.
 
 
 13
 Data Disc, 557 F.2d at 1287. In determining whether the district court erroneously rejected jurisdiction, our first task is to determine if Erie has "purposefully avail[ed] itself of the privilege of conducting activities within [California], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In answering this question, we must "view the facts with a common sense perspective ...." Forsythe v. Overmyer, 576 F.2d 779, 782 (9th Cir.1978), cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174.
 
 
 14
 Erie's failure to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care cannot, in our view, fairly be characterized as an act by which Erie has purposefully availed itself of the privilege of conducting activities in California.
 
 
 15
 Hunt contends two other contacts demonstrate Erie has intentionally availed itself of benefits from the State.
 
 
 16
 One. Erie availed itself of the benefit of California's welfare programs. Because of its refusal to pay full benefits to Hunt she was compelled to seek out a state which provided a publicly assisted substitute.
 
 
 17
 Two. Erie availed itself of the privilege of doing business in California by mailing into the State some payments on the policy and its bad faith refusal to pay the amount Hunt contends was due.
 
 
 18
 We consider in turn whether either contact confers jurisdiction over Erie.
 
 A. California's Welfare Programs
 
 19
 Hunt argues that Erie's refusal to fulfill its insurance promises compelled her to move to a state whose welfare programs would assume Erie's obligations. She states in her brief: "Erie, in every sense of the word, purposefully availed itself of California's largess and derived substantial benefit from California." She concludes that this forum is therefore an appropriate one in which to exercise personal jurisdiction over the insurer.
 
 
 20
 In our view, Hunt's decision to move to California cannot be attributed to Erie. We sympathize with Hunt's contention that she had to come to California in order to obtain rehabilitative treatment. Nevertheless, it ultimately was Hunt's decision to move to California in order to receive the treatment. To characterize her decision as an intentional action by Erie, for purposes of meeting the purposeful availment requirement of due process, would frustrate the very policy behind that requirement: ensuring that a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (emphasis added).
 
 
 21
 Even if we assume Erie "caused" Hunt to accept public assistance from California, Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) forbids us from concluding Erie has benefitted as a result. Kulko involved an action brought in California state court to increase child support. The mother and children were in California, while the father was a New York resident and had no contacts with California. The California courts asserted personal jurisdiction over the father by concluding, inter alia, that he had derived economic benefit from his children's decision to move to California. In the state courts' view, his costs of supporting the children in New York had decreased by virtue of their presence in California.
 
 
 22
 The Supreme Court rejected this analysis. The Court explained that the father's support costs did not decrease because his children were now in California. His costs decreased because the children were no longer in New York, and the mother had not filed for increased support in New York where jurisdiction existed to grant it. Similarly, Erie is not benefitting because the State of California elects to offer welfare to the needy. If Erie's costs are lower by virtue of Hunt's move, it is because Hunt has not brought suit in a forum with jurisdiction to adjudicate Erie's obligations under the policy.
 
 
 23
 In sum, we must reject Hunt's argument that Erie has purposefully availed itself of a benefit from California by refusing to pay what Hunt contends is due on the policy. To predicate jurisdiction on the basis of her move to California, and the public assistance she received as a result, would "shift the focus of the inquiry from the relationship among the defendant, the forum, and the litigation to that among the plaintiff, the forum, ... and the litigation.... Such an approach is forbidden by International Shoe and its progeny." Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).
 
 
 24
 B. Erie's Communications with Hunt in California
 
 
 25
 Hunt next contends that Erie purposefully availed itself of the privilege of conducting business in California by mailing to California payments it conceded were due on the policy. Moreover, Hunt asserts Erie committed a tort in California by mailing to that State its refusal to assume unlimited liability for her medical costs. We cannot agree that the requisite minimum contacts are established because a plaintiff's move into a state requires the defendant to send communications into that forum.
 
 
 26
 The Supreme Court rejected an analogous proposition in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court was asked to hold that when a mobile chattel causes a tort in a state where the plaintiff has taken the chattel, the chattel's nonresident distributor or dealer can be said to have established minimum contacts with the state. The court refused. "[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' " Id. at 298, 100 S.Ct. at 567 (citations omitted). The mere fact that Erie communicated with Hunt in the state, and may have committed a tort in the exchange of correspondence, does not show that Erie purposefully availed itself of the privilege of conducting business in California. Hunt's move to California forced Erie to send mail to that State concerning her claim.
 
 IV.
 
 27
 As we can find no act by which Erie has intentionally availed itself of benefits from the State of California, we conclude that International Shoe and its progeny forbid the exercise of personal jurisdiction over Erie in that forum. We recognize that trial of this matter in another forum will pose a great hardship to Hunt. We also are mindful of California's substantial interest in the outcome of this action due to the economic benefits the State is conferring on her. Due process requirements, however, compel us to conclude that the district court was correct in concluding that there were insufficient contacts shown to establish in personam jurisdiction.
 
 
 28
 Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.
 
 
 29
 World-Wide Volkswagen, 444 U.S. at 294, 100 S.Ct. at 565. The concern for a defendant's due process rights expressed in the quoted passage applies with equal force to the case at bar. Before we may consider plaintiff's contacts with the forum, and California's commendable regard for her welfare, we must seek out evidence that the defendant purposefully availed itself of benefits from activities relating to that State. Finding none, we AFFIRM.