736 P.2d 2

**Robert O. BATTON and Linda Batton, Plaintiffs/Appellants,**

**v.**

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

**No. CV-86-0392-PR.**

Supreme Court of Arizona, En Banc.

April 16, 1987.

Hofmann, Salcito, Stevens & Myers, P.A. by Leroy W. Hofmann, Kenneth W. Burford, Phoenix, for plaintiffs/appellants.

Jennings, Strouss & Salmon by Michael A. Beale, Jefferson L. Lankford, Phoenix, for defendant/appellee.

FELDMAN, Vice Chief Justice.

Robert and Linda Batton sued their automobile insurer, Tennessee Farmers Mutual Insurance Company (Tennessee Farmers), for breach of contract and bad faith. The trial court dismissed the Battons' suit on the ground that Arizona lacked personal jurisdiction over Tennessee Farmers. The court of appeals affirmed the dismissal, concluding "that exercise of jurisdiction in this case would be unconstitutional." *Batton v. Tennessee Farmers Mutual Insurance Co.*, 153 Ariz. 267, 736 P.2d 1 (Ct.App.1986).

We granted review to clarify Arizona's personal-jurisdiction law under the "minimum contacts" rule of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and to reexamine our law in light of recent decisions. Rule 23(c), Ariz.R.Civ.App.P., 17A A.R.S. (Supp. 1986). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS

Robert Batton (Batton) purchased automobile insurance from Tennessee Farmers while he was a Tennessee resident. Batton's insurance provided coverage in all 50 states and included medical benefits. Tennessee Farmers issued Batton's policy in Tennessee and, as far as the record discloses, Batton paid all his premiums in Tennessee.

During a 1983 visit to Arizona, Batton was severely injured while riding as a passenger in his brother's car. Batton's Arizona attorney requested medical benefits from Tennessee Farmers in January 1984. Tennessee Farmers responded by requesting formal proof of loss and various other information, much of it seemingly irrelevant, from Batton and his brother's insurer. Eventually, Tennessee Farmers cancelled Batton's policy, sending notice to his Tennessee address. After additional correspondence with Batton's Arizona attorney, Tennessee Farmers denied Batton's claim for reimbursement of medical expenses on the ground that "the medical portion of [Batton's] policy is subrogatable," whatever that means.

Although Batton had left Arizona and had moved his family from Tennessee to Florida shortly after the accident, he sued Tennessee Farmers in Arizona, alleging

breach of contract and bad faith. Tennessee Farmers has no offices or agents in Arizona, is not licensed to do business in Arizona, and, aside from Batton's claim, has never investigated, adjusted, settled, or defended a claim in Arizona. Tennessee Farmers therefore responded with a motion to dismiss for lack of personal jurisdiction. The trial court granted the motion and the court of appeals affirmed.

## II. DISCUSSION

### A. The Relationship Between the Arizona Long-Arm Rule and Due Process

Batton first argues that Arizona's long-arm rule, Rule 4(e)(2), Ariz.R.Civ.P., 16 A.R.S., covers this case. That rule authorizes jurisdiction over Arizona residents, persons "doing business in this state," and persons who have "caused an event to occur in this state out of which the claim which is the subject of the complaint arose...." According to Batton, by adjusting, investigating, and eventually denying his claim, Tennessee Farmers transacted insurance business in Arizona, *see* A.R.S. §§ 20–106(B)(5), –403, and caused an event—bad faith breach of contract—to occur in Arizona.

The second part of Batton's argument recognizes that state court jurisdiction over foreign defendants is limited by the due process clause of the fourteenth amendment. Foreign defendants have a liberty interest, protected by the due process clause, "in not being subject to the binding judgments of a forum with which [they have] established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (quoting *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160). Batton argues that Tennessee Farmers' contacts with Arizona, although minimal, satisfy the threshold requirement of due process.

Although Batton's two-step argument—looking first at the long-arm rule and then at due process—is based on well-established Arizona case law, *e.g.*, *Meyers v. Hamilton Corp.*, 143 Ariz. 249, 251, 693 P.2d 904, 906 (1984); *Manufacturers' Lease Plans, Inc. v. Alverson Draughon College*, 115 Ariz. 358, 359, 565 P.2d 864, 865 (1977), it unnecessarily complicates the jurisdictional inquiry. As we implicitly recognized in *Northern Propane Gas Co. v. Kipps*, 127 Ariz. 522, 525–27, 622 P.2d 469, 472–74 (1980) (skipping the first step and analyzing jurisdiction solely in terms of minimum contacts), this two-step inquiry is redundant because our interpretation extends Rule 4(e)(2) to the permissible limits of due process. *Meyers*, 143 Ariz. at 252, 693 P.2d at 908; *Northern Propane*, 127 Ariz. at 527, 622 P.2d at 474; *Manufacturers' Lease Plans*, 115 Ariz. at 359, 565 P.2d at 865. Consequently, if the constitutionally required minimum contacts are present, the defendant's conduct necessarily satisfies Rule 4(e)(2). *See Northern Propane, supra; Maake v. L & J Press Corp.*, 147 Ariz. 362, 363, 710 P.2d 472, 473 (App. 1985).

We therefore limit our inquiry in this case to whether Arizona may constitutionally assert jurisdiction over Tennessee Farmers. *See Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985) (if state long-arm statute has been interpreted to extend to the limits of due process, the court need only inquire whether the assertion of jurisdiction would be constitutionally permissible).

### B. General or Specific Jurisdiction

Depending on the type and extent of defendant's contacts, states may assert either general or specific jurisdiction. *Compare Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (general) *with Burger King*, 471 U.S. at 472–73, 105 S.Ct. at 2182 (specific). General jurisdiction subjects the defendant to suit on virtually any claim, "[e]ven when the cause of action does not arise out of or relate to the [defendant's] activities in the forum State...." *Helicopteros Nacionales*, 466 U.S. at 414, 104 S.Ct. at 1872. General jurisdiction is unavailable, however, unless the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.*

■ Batton concedes that general jurisdiction is inappropriate in this case. Tennessee Farmers has not conducted business in Arizona, or even adjusted or litigated a prior claim here. Indeed, rather than "continuous and systematic," Tennessee Farmers' alleged contacts with Arizona are limited to the conduct being litigated in this case.

Thus, the jurisdictional issue before us is confined by the facts to whether Arizona may constitutionally assert specific jurisdiction over Tennessee Farmers for the limited purpose of resolving this single lawsuit. Specific jurisdiction is proper only if Tennessee Farmers' alleged breach of contract and bad faith—the conduct being litigated—establish the necessary "minimum contacts" between Tennessee Farmers and Arizona. *See Burger King*, 471 U.S. at 471–74, 105 S.Ct. at 2181–83.

### C. *Minimum Contacts—General Principles*

When specific jurisdiction is at issue, the minimum-contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). The question is whether "the *defendant's* conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (emphasis added). In defining when a defendant should "reasonably anticipate" out-of-state litigation, the Supreme Court has consistently held that the foreseeability of an injury or event in another state is "not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World-Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566). Thus, instead of limiting our inquiry to the foreseeability of out-of-

state litigation, we must determine whether defendant *purposefully* created contacts with the forum state:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but *it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.*

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958) (emphasis added), *quoted with approval in Burger King*, 471 U.S. at 474–75, 105 S.Ct. at 2183.

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, ... or of the 'unilateral activity of another party or a third person'...." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (citing *Keeton, World-Wide Volkswagen*, and *Helicopteros*). Jurisdiction is proper only if "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." 471 U.S. at 476, 105 S.Ct. at 2183–84 (emphasis in original); *accord Asahi Metal Industry Co. v. Superior Court*, — U.S. —, —, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). According to the Supreme Court's jurisprudence, by focusing on defendant's *purposeful contacts with the forum*, the due process clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *accord Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182.[1]

---

1. Once it is established that defendant purposefully directed its activities at the forum state, courts must also inquire whether jurisdiction would "offend 'traditional notions of fair play and substantial justice.'" *Asahi*, — U.S. at —, 107 S.Ct. at 1033. This determination re-

### D. *Application: Is There Jurisdiction?*

Batton argues that Arizona may constitutionally exercise jurisdiction in this case either (1) because Batton's policy provided coverage in all fifty states, or (2) because Tennessee Farmers breached its contract and committed a tort in Arizona. We address each of these arguments in turn.

#### 1. *Jurisdiction Based on the Policy and the Accident*

Batton first argues that Tennessee Farmers purposefully entered into a contract with Batton that provided accident coverage in all 50 states. This act, so the argument goes, subjects Tennessee Farmers to Arizona's jurisdiction because it was reasonably foreseeable that an accident could happen anywhere in the United States, including Arizona.

■ Although Justice Brennan made a similar argument in *World-Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 580 (Brennan, J., dissenting), he noted in *Burger King* that the Court "has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." 471 U.S. at 474, 105 S.Ct. at 2183. Issuing an insurance policy providing nationwide coverage is no different than selling a product, such as a car, with a warranty that it is fit for its intended use and with the knowledge that it may be used nationwide. *World-Wide Volkswagen* establishes that jurisdiction is improper in either case.

■ Batton's presence in Arizona was the consequence of his own *unilateral* activity and fails to establish any "purposeful contacts" between Tennessee Farmers and Arizona. Extension of nationwide coverage by an insurer may make lawsuits by insureds in foreign jurisdictions reasonably foreseeable, but state jurisdiction over foreign defendants is impermissible unless the defendant, not the plaintiff, has purposefully directed its activities at the forum state. *See World-Wide Volkswagen, supra* (due process clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's foreseeable decision to drive there); *Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (California lacked jurisdiction over divorced husband sued for child-support payments whose only affiliation with California was his spouse's decision to move there); *Hanson, supra* (state lacked jurisdiction over trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there); *Northern Propane, supra* (Arizona lacked jurisdiction over Michigan company that had filled propane tanks it knew were destined for Arizona).

The cases cited by Batton, *Fukaya v. Velho,* 416 F.Supp. 785 (D.Guam 1976) and *Rossman v. Consolidated Insurance Co.,* 595 F.Supp. 505 (E.D.Va.1984), are not persuasive. *Fukaya* was an action brought against an insured and his insurer under a direct action statute. *Rossman* was a tort and declaratory judgment action brought by a resident victim against the insured and his insurer, seeking damages and a declaration of coverage. Both cases support jurisdiction when the insurer has agreed to defend and indemnify its insured against liability claims brought anyplace in the country. Under this view, the company has agreed to submit to jurisdiction in any forum that has jurisdiction to adjudicate claims against its indemnitee.

■ In the present case, no one has sued Batton in Arizona. Tennessee Farmers'

---

quires evaluation of such factors as the burden on defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental substantive social policies. *See* —— U.S. at ——, 107 S.Ct. at 1033–34; *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564–65. In "rare cases," the "minimum requirements inherent in the concept of 'fair play and substantial justice' ... defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" *Asahi,* —— U.S. at ——, 107 S.Ct. at 1035 (Brennan, J., concurring in part) (quoting *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185; brackets and ellipsis in original).

Because we find that Tennessee Farmers has not purposefully engaged in forum activities *see post* section II–D, we do not address these additional factors.

agreement to defend and indemnify Batton in any state does not imply an agreement to allow its own insured to bring suit in any state. Tennessee Farmers could reasonably foresee that Batton might be hurt in any state and that he might have a claim arising out of such injuries, but this falls short of satisfying the purposeful availment test. The sole question here is whether Tennessee Farmers purposefully directed its activities at Arizona. On these facts, it is not possible to say that it has done so. Batton is not an Arizona resident and Tennessee Farmers has never availed itself of the opportunity to do business in Arizona. *See ante* 153 Ariz. at 272, 736 P.2d at 6; *cf. August v. HBA Life Insurance Co.*, 734 F.2d 168 (4th Cir.1984) (Arizona company sold health insurance to Arizona residents who subsequently moved to Virginia; company could be sued in Virginia because it was foreseeable that Arizona insureds might move to other states where covered occurrence might occur, and, in addition, the insureds had become Virginia residents, had paid premiums from Virginia, and the Arizona company had solicited change endorsements after the insureds moved to Virginia).

Although the Supreme Court's recent decision in *Asahi, supra,* may represent a slight retreat from the "purposeful availment" test announced in *World-Wide Volkswagen* and *Burger King*, it also fails to support Batton's argument. In *Asahi,* Justice O'Connor, joined by Chief Justice Rehnquist and Justices Powell and Scalia, concluded that mere "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." —— U.S. at ——, 107 S.Ct. at 1033. Justice Brennan, however, in an opinion joined by Justices Marshall, Blackmun, and White, held that the purposeful availment test is met whenever a defendant places its products in the stream of commerce with knowledge that the product may eventually be marketed in the forum state. —— U.S. at ——, 107 S.Ct. at 1035. Justice Stevens thought it unnecessary to reach the stream-of-commerce question, but noted his "inclin[ation] to conclude that a regular course of dealing that results in de]iveries

of over 100,000 units annually over a period of several years would constitute 'purposeful availment.'" —— U.S. at ——, 107 S.Ct. at 1038. Thus, at least four, and possibly five, members of the Court believe that the "purposeful availment" test is satisfied if the defendant has purposefully placed its products in the stream of commerce with knowledge that those products will be marketed in the forum state.

■ Even if we agreed with the views espoused by Justices Brennan and Stevens on this point, Arizona could not constitutionally assert jurisdiction in this case. Tennessee Farmers did not intentionally do anything to "purposefully avail" itself of the Arizona forum. And nothing in the record permits us to infer that it conducted its business knowing that it was regularly coming into contact with Arizona. · Thus, whether we take Justice O'Connor's view, Justice Brennan's view, or Justice Stevens' view, Batton does not meet the test. Nothing in the transaction between Tennessee Farmers and Batton .provided Tennessee Farmers with "'clear notice that it [may be] subject to suit' in [Arizona] and thus [the] opportunity to 'alleviate the risk of burdensome litigation' [here]." *Burger King,* 471 U.S. at 475 n. 17, 105 S.Ct. at 2183–84 n. 17 (quoting *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567).

### 2. *Jurisdiction Based on Breach of Contract and Bad Faith*

A better argument for jurisdiction is that Tennessee Farmers' bad faith breach of contract establishes a purposeful tie between Tennessee Farmers, this litigation, and Arizona. According to Batton, it is sufficient that Tennessee Farmers knew (or should have known) that its handling of Batton's claim would have a significant effect in Arizona.

The premise of Batton's argument is undoubtedly correct: if a defendant purposefully directs its activities at a particular forum, and the effects of its activities are reasonably foreseeable, jurisdiction is proper because the defendant can reasonably anticipate being called to account for its own actions. For example, in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Court approved Cal-

ifornia's assertion of jurisdiction over two magazine writers and editors who libeled plaintiff in a magazine sold in California. *See also Keeton, supra* (magazine purposely marketed in New Hampshire). Similarly, in *Brown v. Flowers Industries, Inc.,* 688 F.2d 328 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983) the court found one defamatory telephone call to a forum resident sufficient to confer jurisdiction. *But see Reuber v. United States,* 750 F.2d 1039, 1049–50 (D.C.Cir.1984) (defamatory "telephone calls into the district are not acts within the District conferring personal jurisdiction").

■ Batton's premise, however, does not fit the facts of his own case. First, and most important, Tennessee Farmers' correspondence with Batton's Arizona attorney, even if tortious or actionable as a breach of contract, is not a "purposeful" contact *with Arizona.* As the court of appeals noted, "Were the rule otherwise, any commodity purchased outside the state could be brought into the state and any claim arising from its use could be brought against a non-resident seller or manufacturer, if not immediately, then after a denial of liability." Memo. decision at 2–3. We agree with the ninth circuit's conclusion in *Hunt v. Erie Insurance Group,* 728 F.2d 1244, 1248 (9th Cir.1984), a case nearly identical to this one,[2] that the requisite minimum contacts are not established when the *plaintiff's action* "requires the defendant to send communications into th[e] forum." The mere fact that Tennessee Farmers responded to Batton's Arizona lawyers, and may have committed a tort against Batton in the process, is not evidence that Tennessee Farmers purposefully availed itself of the privilege of conducting business in Arizona. *See Hunt,* 728 F.2d at 1248; *cf. Meyers, supra.* Jurisdiction over bad faith cases cannot be established solely by the plaintiff's unilateral choice of the forum from which to request benefits. *Hunt,* 728 F.2d at 1248.

Second, *Calder, Brown,* and similar cases are based in part on the unfairness of requiring a forum resident to travel to a foreign jurisdiction to seek redress for wrongs suffered in his home state. This concern is absent here because Batton is not an Arizona resident.

■ Third, Tennessee Farmers' acts all occurred in Tennessee and it is not clear that Batton felt the effects of Tennessee Farmers' allegedly bad faith breach in Arizona. Batton had some debts in Arizona, but any emotional trauma resulting from Tennessee Farmers' conduct was probably felt in Florida, where Batton actually lived, not in Arizona. *Cf. Meyers,* 143 Ariz. at 251–52, 693 P.2d at 906–07 (for purposes of long-arm statute, tort is committed where event or injury occurs). The "run around" Tennessee Farmers may have given Batton's Arizona lawyer is not grounds for jurisdiction.

### III. CONCLUSION

The due process clause bars Arizona state court jurisdiction over Tennessee Farmers in this case because Tennessee Farmers did not purposefully establish minimum contacts with Arizona. The judgment of the trial court is affirmed, and the decision of the court of appeals is approved as modified.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

HAYS, J., participated in the determination of this matter but retired prior to the filing of this opinion.

MOELLER, J., did not participate in the determination of this matter.

**2.** Batton attempts to distinguish *Hunt* on the ground that the plaintiff filed her claim and alleged bad faith in California, although her automobile accident occurred in Colorado. This distinction is irrelevant. The due process inquiry focuses on the defendant's purposeful contacts with the forum asserting jurisdiction, not on the plaintiff's unilateral actions. That Batton was injured in Arizona and filed his claim from here does not increase Tennessee Farmers' contacts with Arizona.