JOURNAL ENTRY AND OPINION
The law firm of Bonn, Luscher, Padden Wilkins ("Bonn Luscher") appeals Judge Timothy McCormick's order staying the execution of and vacating a default judgment it had obtained, in the state of Arizona, against appellee Elaine Haggerty. Bonn Luscher maintains error in determining that the default judgment rendered in its favor was void for lack of personal jurisdiction. We disagree and affirm.
In June 1993, James Haggerty, the husband of Mrs. Haggerty, retained the services of Bonn Luscher in order to prosecute a claim against Cragar Industries, Inc. ("Cragar") of Arizona. In essence Haggerty claimed he had been defrauded in his efforts to purchase Cragar out of bankruptcy. During his attempted purchase, he executed a stock subscription agreement to purchase 550,000 shares of Cragar stock and, on December 31, 1992, paid for this stock, as well as a subordinated note, part in cash and in part through a quit claim deed on real estate with an office building owned by James A. Haggerty, Inc., and in part by a quit claim deed to Cragar on the family home in Seven Hills, Ohio. The home was titled solely in Mrs. Haggerty's name and she endorsed the deed on December 31, 1992.
As part of this stock subscription agreement, the Haggertys received an option to repurchase the home and the office building from Cragar for the sum of $550,000 on or before June 30, 1993.
On June 4, 1993, at a general meeting of the board of directors of Cragar in Phoenix, Arizona, Haggerty was removed as President and CEO of the corporation. On June 21, 1993, at a shareholders meeting, a demand was made for Haggerty to pay the $550,000 by June 30, 1993, or lose the right to, re-acquire the residence and the office building.
Haggerty retained Bonn Luscher to research, draft and file a complaint against Cragar before the June 30, 1993 deadline, signed its engagement agreement and gave it a $10,000 advance on attorney fees. The filed complaint, listing both Mr. and Mrs. Haggerty as plaintiffs, was sent to Ohio counsel who successfully recorded alis pendens against the Seven Hills home. All dealings with Bonn Luscher were only through Haggerty, and all bills submitted were addressed solely to him.
By November 30, 1993, Haggerty, now short on funds, was indebted to Bonn Luscher for over $22,000 in legal fees and costs. On December 8, 1993, Mrs. Haggerty wired $10,000 to Bonn Luscher as partial payment for the debt. On December 13, 1993, Bonn Luscher advised Mr. and Mrs. Haggerty that unless the account could be brought up to date and satisfactory arrangements made to fund anticipated future fees, it would file a motion to withdraw. Bonn Luscher subsequently filed a motion to withdraw which was granted on January 12, 1994.
Mrs. Haggerty then contacted Cleveland attorney Marvin N. Halpern in an attempt to secure her rights and recover her property. Through the efforts of Halpern, the Arizona lawsuit was settled; Haggerty received a modest amount of cash and the return of the office building property, and the Seven Hills home was reconveyed to Mrs. Haggerty.
On March 28, 1996, Bonn Luscher filed a complaint against both Mr. and Mrs. Haggerty praying for recovery of its unpaid legal fees and costs. After a default had been entered, Haggerty, prose, filed an answer both on his behalf and that of Mrs. Haggerty, but that pleading was struck from the file by a December 3, 1996 order. The Haggertys were advised of a default judgment hearing scheduled for February 6, 1997, failed to appear in Arizona on that date, and Bonn Luscher obtained a final judgment against the Haggertys jointly and severally.
On October 1, 1997, pursuant to R.C. 2329.022, Bonn Luscher filed its judgment in the Cuyahoga County Court of Common Pleas. In response, the Haggertys each filed a motion for a stay of execution of foreign judgment, and a motion to vacate a default judgment. On July 20, 1998, after many hearings, Judge McCormick denied Mr. Haggerty's motions, but granted Mrs. Haggerty's motions finding that the Arizona court lacked personal jurisdiction over her. Specifically, the judge noted that: (1) Mrs. Haggerty was not a party to the contract for services with Bonn Luscher; (2) Mrs. Haggerty did not have notice she was named as an individual in the Arizona lawsuit [sic Cragar]; (3) Mrs. Haggerty never had contact with Bonn Luscher; and, (4) Mrs. Haggerty did not receive any benefit from the services contracted for and performed by Bonn Luscher. It is from that portion of the order vacating the default judgment against Mrs. Haggerty that Bonn Luscher appeals.
Its sole assignment of error states:
 THE TRIAL COURT IMPROPERLY GRANTED DEFENDANT-APPELLEE ELAINE HAGGERTY'S MOTION TO VACATE JUDGMENT AND MOTION TO STAY EXECUTION.
The argument presented by Bonn Luscher to prove that Mrs. Haggerty availed herself of the protection of the laws of Arizona and thus subjected herself, through Arizona's long-arm statute, to its jurisdiction is twofold: (1) she ratified the Bonn Luscher engagement agreement entered into by her husband and/or, (2) through her agent, Haggerty, she acted in a manner that gave her "fair warning" she may be subject to Arizona's jurisdiction, and, for which she received a direct benefit.
Bonn Luscher first argues that Mrs. Haggerty became a party to her husband's engagement of their law firm when she ratified his actions, and thus the contract for its services, through a distinct and definable action; she wired $10,000 to it as partial payment of past due legal fees. This ratification, they maintain, provided Arizona with the necessary minimum contacts to allow personal jurisdiction.
In our analysis, it is first necessary to review the authentication of a foreign judgment in Ohio. R.C. 2329.022
states:
 A copy of any foreign judgment authenticated in accordance with section 1738 of Title 28 of the United States Code, 62 Stat. 947 (1948), may be filed with the clerk of any court of common pleas. The clerk shall treat the foreign judgment in the same manner as a judgment of a court of common pleas. A foreign judgment filed pursuant to this section has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a court of common pleas and may be enforced or satisfied in the same manner as a judgment of a court of common pleas.
In Ohio, when confronted by a judgment rendered in a sister state, "[t]he local law of the state where the judgment was rendered determines whether the parties are precluded from attacking the judgment collaterally on the basis of a lack of personal jurisdiction when the defendant's initial objection that the court has no jurisdiction over him has been overruled." Speyerv. Continental Sports Cars, Inc. (1986), 34 Ohio App.3d 272,518 N.E.2d 39.
Accordingly, our analysis now turns to Arizona's requirements for the exercise of personal jurisdiction. Pursuant to Arizona's long-arm statute, Rule of Civil Procedure 4.2(a), an Arizona court "may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of the United States." In its application, Arizona courts have interpreted the exercise of personal jurisdiction over a non-resident defendant, under this rule and due process, to exist when it is established that the defendant had "sufficient minimum contacts with the forum state such that the exercise of long-arm jurisdiction does not offend `traditional notions of fair play and substantial justice.'" Bils v. Nixon,Hargrove, Devins Doyle (Ariz.App. 1994) 880 P.2d 743, 745, quoting International Shoe Co. v. Washington (1945), 326 U.S. 310,66 S.Ct. 154, 158.
In Arizona, "traditional notions of fair play and substantial justice" are satisfied when an individual has "fair warning" that his actions may subject him to the forum state's jurisdiction.MacPherson v. Taglione (Ariz.App. 1988), 158 Ariz. 309,762 P.2d 596, citing World-Wide Volkswagen Corp. v. Woodson (1980),444 U.S. 286, 100 S.Ct. 559. Moreover, if the defendant has purposefully directed his activities at residents of the forum state, "he cannot avoid jurisdiction merely because he did not physically enter the state, and must present a compelling case that the presence of other considerations would render jurisdiction unreasonable." Id.
The "minimum contact" inquiry requires a court to focus on the "relationship between the defendant, the forum, and the litigation." Batton v. Tennessee Farmers Mut. Ins. Co. (Ariz. 1987) 153 Ariz. 268, 736 P.2d 2, citing Keeton v. Hustler Magazine,
Inc. (1984), 465 U.S. 770, 775, 104 S.Ct. 1473, 1478. This rule may not be applied unilaterally, as its application will vary depending on the nature of each defendant's activity, and "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Batton, quoting Hanson v. Denckla
(1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, quoted with approval in Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462,105 S.Ct. 2174. See, also, Bils, supra. The "purposeful availment" requirement "ensures that a defendant will not be hailed into a jurisdiction solely as a result of a `random,' `fortuitous,' or `attenuated' contact, * * * or of the `unilateral activity of another party or a third person' * * *" Burger King,471 U.S. at 475, 105 S.Ct. at 2183, citing Keeton, World-Wide Volkswagen,supra, and Helicopteros Nacionales v. Hall (1984), 466, U.S. 408,104 S.Ct. 1868. Only when the defendant, himself, creates a substantial connection with the forum state will jurisdiction be proper. Batton, citing Burger King, supra; accord Asahi MetalIndustry Co. v. Superior Court (1987), 480 U.S. 102, 112,107 S.Ct. 1026, 1032.
In Arizona, a person who was not an original party to a contract may nevertheless ratify the contract "and thus become bound by its terms, by affirming the contract through words or deeds." All-Way Leasing, Inc. v. Kelly (Ariz.App. 1994), 182 Ariz. 213,895 P.2d 125, citing Young Mines Co. v. Citizens' State Bank
(Ariz. 1931), 37 Ariz. 521, 528-29, 296 P. 247, 250. An intent to ratify will be inferred if the non-party to the contract "voluntarily accepts benefits conferred by the contract." All-Way, citing Hubbard v. Geare (Ariz. 1954), 77 Ariz. 262, 264,269 P.2d 1064, 1065.
After careful review of the record, it is clear that Mrs. Haggerty did not ratify her husband's contract with Bonn Luscher through either her actions or her deeds. As previously mentioned, Bonn Luscher argues that Mrs. Haggerty ratified the agreement through the wire transfer and, also, by receiving a direct benefit of their representation. However, it cannot be said that Mrs. Haggerty's action, the payment of her husband's debts effected by a wire transfer, satisfies the minimum contacts or purposeful availment criteria of Arizona's long-arm statute. Nor can it be said that this action gave her "fair warning" that she would be subject to Arizona's jurisdiction, or that she purposefully conducted activities in the state that would allow her the benefits and protections of its laws. Mrs. Haggerty merely wire transferred money as the result of a "unilateral activity" of her husband, which leaves her contact with Arizona attenuated, insubstantial, and not within the purview of Arizona's long-arm statute. See,Burger King, supra.
Bonn Luscher similarly incorrectly asserts a ratification by Mrs. Haggerty because of benefits she received as a result of their representation of Mr. Haggerty. There is ample evidence in the record to support the proposition that the greatest benefit claimed by Bonn Luscher, the reconveyance of the title to her residence in Ohio, was effected by and through her Ohio attorney. In fact, it may be argued that not only did Mrs. Haggerty not receive a benefit from said representation, but was harmed to the amount of $10,000 in legal fees for which she neither contracted or wanted. As a result, Bonn Luscher again fails to prove the minimum contacts necessary for the imposition of personal jurisdiction in Arizona.
Bonn Luscher next argues that Mrs. Haggerty is subject to Arizona jurisdiction through a theory of agency, as through her Husband's actions, her agent by implication, she received a direct benefit. This agency may be implied, it argues, because: (1) at the time Haggerty retained Bonn Luscher, the Haggertys were husband and wife — Arizona is a community property state; (2) Haggerty's retention of Bonn Luscher was in part to protect Mrs. Haggerty's interest in their Ohio home; (3) Mrs. Haggerty was a named plaintiff in the Cragar complaint, which was verified by Mr. Haggerty; (4) the Cragar complaint specifically mentions the Ohio residence; (5) when Bonn Luscher filed the Cragar complaint, Mrs. Haggerty, through her own attorney (Mr. Halpern), was able to place a Lis Pendens on the Ohio property to prevent Cragar from disposing of it; and, (6) Mrs. Haggerty never objected to Bonn Luscher's representation, wired $10,000 as payment therefor, and received direct benefits as a result.
Mrs. Haggerty argues that no implied agency could exist because: (1) Haggerty, as an individual, retained the services of Bonn Luscher; (2) she was a named plaintiff in the Cragar complaint but not referred to anywhere else in the document, nor is she listed as a party; (3) the Cragar complaint is ambiguous in its reference to the Ohio property and identifies it as the "Haggerty real property"; (4) other steps could have been taken to protect the residence besides the filing of lispendens; (5) she only became aware of Bonn Luscher's representation when they were seeking payment, at that point in time it was to late to object; (6) the $10,000 she wired was from her husband's account was a singly authorized transaction; and, (7) any benefit she received regarding this matter was effectuated by her Ohio counsel, Mr. Halpern.
In Canyon State Canners, Inc. v. Hooks (Ariz. 1952), 74 Ariz. 70,243 P.2d 1023, the Arizona Supreme Court defined implied agency:
 The relation of agency need not depend upon the express appointment and acceptance thereof, but may be, and frequently is, implied from the words and conduct of the parties and the particular circumstances of the particular case. If, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by alleged principal, and whether or not the parties understood it to be agency.
* * *
 An implied agency must be based on facts for which the principal is responsible; they must, in the absence of estoppel, be such as to imply an intention to create an agency, and the implication must arise from a natural and reasonable, and not from a forced, strained or distorted, construction of them. They must lead to a reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency. * * *
Id.; see, also, Arizona Storage Distributing Co. v. Rynning
(Ariz. 1930), 37 Ariz. 232, 293 P. 16.
In order to find implied agency in this particular case, Bonn Luscher must prove that an intention to create an agency on the part of Mr. and Mrs. Haggerty, as well as a mutual assent as to its existence. As mentioned above, the facts presently asserted show that the relationship between Bonn Luscher and Mrs. Haggerty is one that is attenuated and, at best, one that arises from a forced or strained interpretation of them. The record is devoid of any proof that Haggerty, in hiring Bonn Luscher, attempted to act as Mrs. Haggerty's agent, or even implied that he was doing so. It is understandable that Bonn Luscher, existing in a community property state, assumed that the husband was acting on behalf of the wife, but it failed to show agency because of the lack of mutual assent. The facts clearly indicate that Mrs. Haggerty did not contract for its services, and in fact, upon discovery of its representation of her husband, unilaterally rejected the representation when she hired her own Ohio lawyer to protect her interests.
Bonn Luscher has failed to prove the existence of the necessary "minimum contacts" to avail itself of Arizona jurisdiction over Mrs. Haggerty pursuant to Arizona's long-arm statute.
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________ ANNE L. KILBANE, JUDGE
 JOHN T. PATTON, P.J., AND KENNETH A. ROCCO J., CONCUR