NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JON PICUS, *Plaintiff/Appellant,*

*v.*

KUSHNER CARLSON PC, *Defendant/Appellee.*

No. 1 CA-CV 17-0053
FILED 12-5-2017

Appeal from the Superior Court in Maricopa County
No. CV 2016-001261
The Honorable Jo Lynn Gentry, Judge

**REVERSED AND REMANDED**

COUNSEL

Law Offices of Kyle A. Kinney PLLC, Scottsdale
By Kyle A. Kinney
*Counsel for Plaintiff/Appellant*

The Entrekin Law Firm, Phoenix
By B. Lance Entrekin
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C A M P B E L L**, Judge:

¶1          Jon Picus ("Picus") appeals the superior court's dismissal of his complaint for lack of personal jurisdiction over an out-of-state law firm defendant. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2          According to the facts alleged in the complaint[2], Picus is a resident of Arizona.  Picus first met Elizabeth Frazier ("Frazier"), a California resident, in February or March 2015. Picus and Frazier discovered they had similar business ideas for a website concerning the sale and maintenance of medical equipment, and agreed to start a company together. They founded Trilogy Imaging Partners, LLC ("Trilogy") as a member-managed Arizona limited liability company with its principal place of business in Maricopa County.  Picus and Frazier agreed each would have a 50-percent membership/management interest in Trilogy.

¶3          With Picus's approval, Frazier engaged the law firm of Kushner Carlson, PC ("KCPC")—a California professional corporation—to draft Trilogy's operating agreement in April 2015.  Frazier informed Picus that KCPC had represented her in a previous personal matter, but neither Frazier nor KCPC disclosed the full extent of the past representation or relationship.  KCPC drafted Trilogy's operating agreement, which specified it "shall be governed by the laws of the State of Arizona" and that venue

---

[1] The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] A plaintiff must allege facts in the complaint supporting personal jurisdiction; if the plaintiff makes a prima facie showing of jurisdiction, the defendant has the burden of rebuttal, although any contradictions must be resolved in favor of the plaintiff. *In re. Cons. Zicam Prod. Liab. Cases*, 212 Ariz. 85, 89-90, ¶ 8 (App. 2006).

for any action arising out of a dispute from the agreement "shall be in the County of Maricopa, State of Arizona."

¶4            In August 2015, Frazier arranged for KCPC to prepare a retainer agreement between KCPC and Trilogy. The agreement states that it is "made by and between Kushner Carlson . . . and Trilogy Imaging Partners, LLC" as "Client" to provide "[g]eneral corporate representation." It provides that "Client agrees to pay for all costs and expenses paid or owed by Client." The agreement further provides that jurisdiction and venue of any non-fee related dispute between KCPC and Trilogy shall be in Orange County, California. The retainer agreement was only signed by Frazier, who did so "on behalf of Trilogy Imaging Partners, LLC." KCPC never offered Picus a conflict waiver addressing any past or present representation of Frazier, nor did it inform him that no KCPC attorney was licensed to practice law in Arizona.

¶5            Picus and Frazier's business relationship began to deteriorate. Picus alleges that, beginning shortly after Trilogy's formation, Frazier started mismanaging company funds and his own efforts generated most of Trilogy's revenue.

¶6            In November 2015, Frazier demanded sole management over Trilogy. Shortly thereafter, a KCPC attorney provided legal advice, based on Arizona law, about restructuring the company. Frazier wanted to procure day-to-day management authority of Trilogy, and while Picus was open to granting Frazier the type of authority typically given to a chief operating officer, he was not agreeable to relinquishing his own management interest. The KCPC attorney advised that this management arrangement could be accomplished only by changing the structure of the partnership from member-managed to manager-managed, which would have put Frazier in complete control. Frazier instructed KCPC to prepare a proposed amended operating agreement stripping Picus of his management authority and changing the jurisdiction and venue in the event of a dispute from Arizona to Orange County, California. Picus refused to sign the proposed amended operating agreement.

¶7            Picus and Frazier's relationship continued to deteriorate. In January 2016, Frazier instructed KCPC to prepare a buyout offer to Picus on her behalf, but Picus rejected the offer. In February 2016, KCPC sent a letter to Picus demanding he sell his membership interest to Frazier or face litigation. In this letter, KCPC represented itself as "general corporate counsel for Trilogy Imaging Partners, LLC."

¶8        In February 2016, Picus filed a complaint in Arizona against both Frazier and KCPC. The complaint alleged claims of breach of contract, breach of fiduciary duty, and breach of covenant of good faith and fair dealing against Frazier, and claims of aiding and abetting, breach of fiduciary duty, and malpractice against KCPC. Pursuant to a settlement agreement, Frazier was dismissed from the case. KCPC filed a motion to dismiss Picus's claims in August 2016 for lack of personal jurisdiction. The superior court found that Picus could not make a showing of the necessary connection between KCPC and Arizona to establish personal jurisdiction, and granted KCPC's motion to dismiss Picus's claims without prejudice.

## DISCUSSION

¶9        Arizona courts may exercise personal jurisdiction to the greatest extent allowed by the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Planning Grp. of Scottsdale, LLC v. Lake Mathews Mineral Properties, Ltd.*, 226 Ariz. 262, 265, ¶ 12 (2011). Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction may be either general or specific, *Planning Grp.*, 262 Ariz. at 265, ¶ 13, but always requires a fact-intensive inquiry to determine whether its exercise comports with traditional notions of "fair play and substantial justice," *Williams v. Lakeview Co.*, 199 Ariz. 1, 3-4, ¶ 8 (2000) (citations omitted). A state may exercise general jurisdiction over its own citizens and "over non-resident corporations whose activities in the state are systematic and continuous." *Planning Grp.*, 226 Ariz. at 265, ¶ 13 (citations omitted). A state may exercise specific jurisdiction "over a defendant who has sufficient contact with the state to make the exercise of jurisdiction reasonable and just with respect to that claim." *Id.* (citation omitted). Picus argues that Arizona has specific personal jurisdiction over KCPC.

¶10        Specific jurisdiction over an out-of-state defendant is appropriate when that defendant has "minimum contacts" with the forum state. *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 291 (1980). Minimum contacts exist when (1) the defendant has purposefully availed itself of the privilege of conducting business in Arizona, (2) the claim results or arises out of the defendant's activities in Arizona, and (3) it is reasonable for the forum state to exercise jurisdiction over the defendant. *Austin v. CrystalTech Web Hosting*, 211 Ariz. 569, 574, ¶ 18 (App. 2005); *see also Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417 ¶ 9 (App. 2013), *aff'd as modified*, 234 Ariz. 1 (2014).

¶11        We view the facts alleged in the complaint in the light most favorable to the plaintiff, but review de novo the superior court's dismissal

for lack of personal jurisdiction. *Rollin v. William V. Frankel & Co., Inc.*, 196 Ariz. 350, 352, ¶ 5 (App. 2000) (citation omitted).

**I.      Purposeful Availment**

¶12      Through its interpretation of federal case law, the Arizona Supreme Court has articulated how to evaluate the first prong of the specific-jurisdiction analysis, purposeful availment: "Considering all of the contacts between the defendants and the forum state, did those defendants engage in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct?" *Planning Grp.*, 226 Ariz. at 268, ¶ 25. The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271 (1987) (citations omitted).

¶13      In *Planning Group*, a California limited partnership sought investment capital for a new mining operation from an Arizona limited liability company. 226 Ariz. at 264, ¶ 2. In soliciting the Arizona LLC's investment, the California LP sent it numerous letters, email, faxes, and reports, and participated in several telephone calls with its representatives located in Arizona. *Id.* at 268-69, ¶ 28. Although the California LP had no physical presence in Arizona, the supreme court held that these actions constituted purposeful direction into Arizona's specific jurisdiction. *Id.* at 268-69, ¶¶ 28-31.

¶14      By contrast, the supreme court also found that a second company involved in the negotiations between the California LP and the Arizona LLC, had *not* purposefully directed its dealings into Arizona. *Id.* at 271, ¶ 40. The second company had prepared a due diligence report detailing the mining project. *Id.* at 264, 271, ¶¶ 4, 40. Even though the second company was a stakeholder in the project and would profit from the Arizona LLC's investment, *id.* at 264-65, ¶ 5, the court noted that it is "not enough that a defendant know that he is dealing with an Arizona resident then located in another state; the requisite activity must instead be purposefully directed at the forum." *Id.* at 271, ¶ 41. Merely preparing and circulating the report with no knowledge that it would reach Arizona was insufficient for Arizona to exercise specific jurisdiction over the second company. *Id.* at 271, ¶¶ 40-41.

¶15      This court has applied the minimum-contacts principles articulated in *Planning Group* to an out-of-state law firm in *Beverage*. 232

Ariz. 414. In *Beverage*, we held Arizona had personal jurisdiction over a Connecticut law firm that issued an opinion letter to an Arizona client. *Id.* at 416, ¶ 4. The law firm was organized and located in Connecticut and had neither an office nor any attorneys licensed to practice in Arizona. *Id.* at 416, ¶ 2. The law firm had the client sign a representation letter formalizing the attorney-client relationship, then prepared a tax opinion letter concerning the legality of a tax-shelter transaction the client had completed. *Id*. at 416, ¶¶ 4-5. The law firm accepted a telephone call from the client's Arizona agent, sent promotional materials about the firm to the client's Arizona agent, and affirmatively agreed to represent the client. *Id.* at 417, ¶ 11. In the course of that representation, the law firm analyzed the legality of the tax-shelter transaction, and then drafted an opinion letter to the client in Arizona knowing the client would rely on it in filing his taxes. *Id.* This court held the client had offered sufficient evidence that the law firm had engaged in "purposeful conduct for which [it] reasonably could expect to be haled into an Arizona court." *Id.* at 417, ¶ 12.

¶16 Much like the law firm in *Beverage*, we find that KCPC purposefully directed its activities into Arizona. KCPC knew that Trilogy was an Arizona LLC, having drafted the company's original operating agreement. KCPC entered into an attorney-client relationship with Trilogy by signing a retainer agreement to provide "general corporate representation" for and to be paid by Trilogy. While retained to provide this "general corporate representation," KCPC sent a demand letter to Picus, a managing member of Trilogy, in Arizona. The letter demanded Picus accept the buyout agreement—which KCPC also prepared—and still represented KCPC as "general corporate counsel" for Trilogy.

¶17 These contacts were not merely random, fortuitous, attenuated, or the result of unilateral activity of another party, *supra* ¶ 12. Even if KCPC performed all its legal research and writing in California, and none of its attorneys ever set foot in Arizona, it provided advice on restructuring the company based on Arizona law. KCPC drafted the Arizona LLC's operating agreement, signed a retainer agreement to advise the Arizona company, and prepared a buyout agreement giving management authority to one member over the other. In doing so, it repeatedly held itself out as acting on behalf of Trilogy, an Arizona LLC. Even if, as KCPC posits, it was truly acting on behalf of Frazier, KCPC would have been acting in conflict with its retainer agreement with Trilogy and did not endeavor to make that clear to Picus.

¶18 At this preliminary stage in the proceedings, we view the facts in the light most favorable to Picus. *A. Uberti and C. v. Leonardo*, 181 Ariz.

565, 566 (1995). Considering the aggregate of KCPC's contacts with Arizona, we therefore find that KCPC engaged in purposeful conduct for which it could reasonably expect to be haled into Arizona's courts.

## II.     Defendant's Activities and Reasonableness

**¶19**         Specific jurisdiction also requires the plaintiff's claim to arise out of the defendant's activities in Arizona. *Austin*, 211 Ariz. at 574, ¶ 18. Picus's complaint seeks damages arising from KCPC's corporate representation of Trilogy, alleging the representation favored Frazier over the best interests of Trilogy itself and that KCPC failed to disclose any conflict of interest. KCPC's activities in Arizona—i.e., undertaking general representation of an Arizona LLC and demanding that a managing member sell his interest while purporting to act in the capacity of corporate counsel—are at the root of Picus's claims of aiding and abetting, breach of fiduciary duty, and malpractice.

**¶20**         Finally, exercise of jurisdiction over an out-of-state defendant must be reasonable. *Id.* Although the determination of reasonableness depends upon the evaluation of many factors, generally the existence of sufficient contacts between the defendant and forum state giving rise to the suit will justify the exercise of jurisdiction. *Planning Grp.*, 226 Ariz. at 270, ¶ 37. A defendant that has purposefully directed its activities toward the forum state "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here, the exercise of specific jurisdiction over KCPC is not unreasonable, and KCPC offers no argument or evidence to the contrary.

## CONCLUSION

**¶21**         For the foregoing reasons, we reverse the decision of the superior court and remand for proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:  AA