13 P.3d 758

Charles R. COHEN, Receiver, and Michael J. Fitzgibbons, Special Deputy Receiver, of American Bonding Company, an Arizona insurer in receivership, Plaintiffs–Appellants,

v.

BARNARD, VOGLER & COMPANY a Nevada professional corporation; J. Richard Barnard and Ann Barnard, husband and wife; Beth L. Kohn and Robert Cole, wife and husband; Philip R. Mays and Maria Mays, husband and wife; Barnard Vogler Employees, Defendants–Appellees.

No. 1 CA–CV 00–0024.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 16, 2000.

Glover & Van Cott, P.A. by Joyce N. Van Cott, Christina Marie Marko, Phoenix, Attorneys for Appellants.

Streich Lang, P.A. by Robert E. Miles, Timothy J. Thomason, Phoenix, Attorneys for Appellees.

**OPINION**

TOCI, Judge.

¶ 1 This appeal arises from the trial court's refusal to exercise personal jurisdiction over a Nevada accounting firm and three individuals who performed an audit in Nevada. The issue is whether accountants who negligently or fraudulently perform an audit in Nevada for a Nevada client are subject to personal jurisdiction in Arizona. We hold that absent proof that the accountants purposefully created contacts with Arizona or purposefully directed their activities at Arizona residents, Arizona cannot subject them to personal jurisdiction.

## I.  BACKGROUND

¶ 2 In January 1994, American Insurance Agencies, Inc. ("AIA") engaged Barnard, Vogler & Company (the "Firm"), a Nevada professional corporation, to audit its accounting statements through December 31, 1993, and prepare an independent auditor's report (the "Report"). The Firm executed the engagement letter in Nevada and delivered it to AIA, a Nevada corporation, in Nevada. The engagement letter did not specify how the Report would be used.

¶ 3 Beth L. Kohn, the Firm's director of audit and accounting, took charge of the audit and performed all her services in Nevada. The Firm's accountant, Philip R. Mays, also performed all his audit work in Nevada. Kohn resides in Nevada, and Mays now resides in Texas.

¶ 4 During the AIA audit, the Firm generated hand-written notes stating: "Appears company has been operating utilizing collateral funds. Could come back to haunt them." American Bonding Company ("ABC"), an Arizona corporation, interprets these notes to mean that AIA, its general managing agent, was spending collateral funds held for the benefit of ABC. Upon finishing the audit on February 1, 1994, the Firm issued its unqualified Report and delivered it to the AIA Board of Directors in Reno, Nevada. In September 1994, AIA forwarded a copy of the Report to ABC upon its request.

18

¶ 5 On December 4, 1998, ABC sued the Firm, Kohn, Mays, and Firm president J. Richard Barnard (collectively "Barnard Vogler"), as well as AIA in Arizona. The First Amended Complaint alleges that AIA breached a contract and committed fraud and other wrongful conduct that injured ABC, and that other defendants participated in various ways. Specifically, ABC claims that Barnard Vogler committed fraud and negligent misrepresentation, and aided and abetted AIA's alleged fraud and breaches of fiduciary duty, by issuing the Report upon which ABC allegedly relied.

¶ 6 On April 19, 1999, after ABC had conducted significant discovery, Barnard Vogler moved to dismiss based on the lack of personal jurisdiction. ABC supported its response with affidavits and copies of Barnard Vogler's audit work papers. The trial court granted the motion on August 9, 1999. ABC moved for reconsideration of the dismissal and for leave to conduct further document discovery and seven depositions to establish the basis for specific jurisdiction. The trial court denied the motions. This appeal followed.

## II. TRIAL COURT PROPERLY REFUSED TO ASSERT SPECIFIC JURISDICTION OVER BARNARD VOGLER

¶ 7 This court reviews de novo a dismissal for lack of personal jurisdiction. *See A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995). We accept as true all material facts alleged by the non-movant. *G.T. Helicopters, Inc. v. Helicopters, Ltd.*, 135 Ariz. 380, 382, 661 P.2d 230, 232 (App.1983).

### A. Barnard Vogler Lacks Minimum Contacts With Arizona

¶ 8 Arizona's long-arm statute is very broad and is intended to allow Arizona to exert personal jurisdiction over a non-resident litigant to the maximum extent permitted by the United States Constitution. *Houghton v. Piper Aircraft Corp.*, 112 Ariz. 365, 367, 542 P.2d 24, 26 (1975); *see also* Ariz. R. Civ. P. 4.2(a). Consequently, we need only consider the constitutional limitations of asserting specific jurisdiction under the Due Process Clause. *See Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987).

¶ 9 Under the federal constitution, two factors govern the scope of personal jurisdiction: the defendant's minimum contacts with the forum state and the reasonableness of exercising personal jurisdiction over the defendant. The requisite contacts for specific jurisdiction exist if Barnard Vogler "purposefully created contacts" with Arizona, *id.* at 271, 736 P.2d at 5, or "'purposefully directed' [its] activities" at Arizona residents. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Furthermore, ABC's claim must arise out of or relate to Barnard Vogler's forum activities. *Id.*

¶ 10 ABC does not dispute that Barnard Vogler performed the audit in Nevada and that none of the defendants is an Arizona resident or does business here. ABC contends, however, that it relied upon the Report and suffered the consequences of that reliance in Arizona. But when the only nexus with the forum state is the effect of a damage-causing event, the requisite minimum contacts generally do not exist. *See Northern Propane Gas Co. v. Kipps*, 127 Ariz. 522, 526, 622 P.2d 469, 473 (1980)(rejecting the plaintiffs' argument that Arizona courts could exercise jurisdiction over a foreign defendant because the defendant's employee knew that the plaintiffs would take a motor home to Arizona). In an attempt to distinguish this case, ABC argues that an exception applies when a foreign defendant engages in intentional conduct calculated to cause injury in the forum.

¶ 11 The United States Supreme Court recognized such an exception in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, a Florida reporter and editor wrote and published a magazine article impugning the professionalism of Shirley Jones, a California resident. *Id.* at 785–86, 104 S.Ct. 1482. The defendants argued that mere foreseeability of an

injury in California did not justify assertion of jurisdiction there. *Id.* at 789, 104 S.Ct. 1482. Nevertheless, the Court rejected this argument because the defendants' action did not constitute "mere untargeted negligence" but rather qualified as tortious activity expressly aimed at California. *Id.* at 789, 104 S.Ct. 1482. The magazine circulated in California, and Jones suffered the brunt of the harm to her reputation there, making California the "focal point" of both the story and the harm. *Id.*

¶ 12 The Eighth Circuit applied *Calder* to an accounting conspiracy claim in *General Electric Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir.1993). *Grossman* arose out of an agreement by Air Canada to purchase the stock of Gelco Express United ("Express") from Gelco Corporation ("Gelco"). *Id.* at 1378. Prior to the sale, Air Canada hired Peat Marwick Thorne ("Peat·Marwick") to assist in investigating Express. *Id.* Peat Marwick discovered significant irregularities in Express's financial statements, which Touche Canada had previously audited. *Id.* at 1378–79. Air Canada asked Gelco to waive the audit report requirement of the sale and accept instead a certification from Peat Marwick that Express had a positive net worth of a certain amount. *Id.* Gelco agreed. *Id.* Peat Marwick accordingly sent a draft certification of net equity letter to Gelco in Minnesota. *Id.* at 1378. The parties then completed the sale. *Id.*

¶ 13 Gelco and General Electric Capital Corporation, which had merged with Gelco, subsequently sued Peat Marwick and Touche Canada, claiming that they and others had conspired to suppress information about Gelco's financial status. *Id.* The plaintiffs brought suit in Minnesota and alleged that the court had jurisdiction over the foreign accounting firms because they caused an injury to occur in that state. *Id.* at 1378. The Eighth Circuit rejected that argument and dismissed the suit. *Id.* at 1387–88. Applying *Calder*, the court reasoned that the focal

point of the wrongdoing lay in Canada, where Express was located, where the firms performed the accounting work, and where the purchase of Express and related negotiations primarily occurred. *Id.* While the plaintiffs felt the harm's effects in Minnesota, the accounting firms performed their work in Canada for a Canadian client and could not reasonably anticipate being haled into a Minnesota court. *Id.*

¶ 14 In this case, even stronger evidence supports the trial court's dismissal. Like the *Grossman* accounting firms, Barnard Vogler contracted to perform the audit in a non-forum state and performed the work there. Unlike the *Grossman* accounting firms, however, Barnard Vogler did not deliver its work to the plaintiff in the forum state. Instead, Barnard Vogler sent the Report to AIA in Nevada and let AIA decide what to do with it. Under *Calder* and *Grossman*, therefore, Nevada was the focal point of any wrongdoing by Barnard Vogler.

¶ 15 In any event, the record fails to support the argument that Barnard Vogler expressly targeted ABC for injury. The work papers indicate that Barnard Vogler knew that AIA was ABC's managing agent and that AIA may have been operating with collateral funds. ABC's conclusion that Barnard Vogler therefore directly targeted fraudulent activity at ABC just does not follow. Nor can we accept ABC's contention that the affidavits of its special deputy receiver and former comptroller establish a prima facie case of jurisdiction. Those documents state that the affiants relied upon the Report in Arizona. While the affidavits are evidence of ABC's reliance, they are not probative as to whether any of the defendant's actions were purposefully directed at Arizona residents. Moreover, the record contains no evidence of any contact between the individual defendants and Arizona, let alone any efforts to target ABC. Hence we affirm the trial court's dismissal.[1]

1. This case contrasts sharply with *Agsco Corp. v. Scheer*, 1999 WL 1285867 (N.D.Ill.Dec.30, 1999), which ABC also cites as supporting jurisdiction here. Defendant Scheer formed a competing business while still employed by Agsco. Scheer also diverted business from Agsco and misappro-

priated some of its assets. Applying *Calder*, the district court ruled that jurisdiction was established because the defendant was aiming fraudulent activity at Illinois with the specific intent to harm. *Agsco* does not apply here because Bar-

## B. ABC Misconstrues *United Bank* And Insurance Regulations

■ ¶ 16 ABC further argues that the trial court misapplied *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F.Supp. 113 (S.D.N.Y.1991). In *United Bank*, a creditor of Southern Atlantic Mortgage, Inc. ("Southern Atlantic") sued an auditor for negligently failing to discover facts about Southern Atlantic's financial condition. *Id.* at 114. The *United Bank* court explained that an accountant may not be held liable to a noncontracting party for negligence unless he engages in actual conduct reflecting his understanding of that party's actual reliance. *Id.* at 117. Because the auditor's engagement letter did not state the audit's purpose, the court concluded that a reasonably prudent accountant would not expect to be haled into any particular forum. *Id.* The *United Bank* court therefore refused to exercise personal jurisdiction. *Id.* at 118.

¶ 17 Here, relying on *United Bank*, the trial court also declined to take jurisdiction. The trial court explained that accounting firms must be aware of the particular purpose of their audit reports and that in this case the minimum contacts were lacking. ABC, however, maintains that Barnard Vogler knew that ABC was losing assets through theft and conversion yet failed to take action. ABC also contends that Barnard Vogler knew that AIA performed no significant work for any other client during the relevant period. According to ABC, these actions affected a known party and provide a basis for distinguishing *United Bank*.

¶ 18 ABC's argument fails to acknowledge that the *United Bank* plaintiff should also have been known to the auditor because it was Southern Atlantic's largest lender. *Id.* at 115. Moreover, a security agreement required Southern Atlantic to provide plaintiff with copies of its financial statements, and the auditor admitted that he may have reviewed the agreement. *Id.* Despite these facts, the *United Bank* court declined to exercise personal jurisdiction because the engagement letter provided no actual notice that the audit would be used in another

nard Vogler never worked for or competed with

jurisdiction. *Id.* at 117. Likewise, Barnard Vogler's engagement letter is silent as to the Report's purpose, and no agreement or regulation required Barnard Vogler to provide ABC with copies of the Report.

■ ¶ 19 Finally, ABC argues that Arizona and Nevada insurance regulations notified Barnard Vogler that it might be haled into an Arizona court. We are not persuaded. The relevant Arizona statute requires an Arizona insurer to "[h]ave an independent financial examination of each managing general agent it does business with on file." Ariz.Rev.Stat. Ann. § 20–301.01(B)(1)(1999). This statute imposes obligations on ABC, not on AIA or its agents. We decline to base personal jurisdiction over Barnard Vogler on obligations imposed upon ABC.

¶ 20 Nevada's parallel regulation also fails to support ABC's argument. *See* Nev. Admin. Code ch. 638A § 540(1)(1993). Nevada law does not require an Arizona insurer to maintain a financial examination for its managing agent. Rather, Nevada regulations pertain to Nevada insurers. The Nevada regulation does not control, or even support, finding jurisdiction in Arizona.

¶ 21 In sum, ABC cannot demonstrate any purposeful conduct connecting Barnard Vogler to Arizona. As a result, no minimum contacts support the exercise of specific jurisdiction. In light of this conclusion, we need not address whether the exercise of personal jurisdiction would be reasonable.

## III. TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING LEAVE TO CONDUCT DISCOVERY

■ ¶ 22 ABC also appeals the trial court's ruling denying leave to conduct discovery on the personal jurisdiction issue. We will not disturb a trial court's discovery rulings absent an abuse of discretion. *Zuern v. Ford Motor Co.*, 188 Ariz. 486, 488, 937 P.2d 676, 678 (App.1996).

¶ 23 On this issue, we find persuasive the reasoning of *Health Care Equalization Committee v. Iowa Medical Society*, 501 F.Supp. 970 (S.D.Iowa 1980), *aff'd*, 851 F.2d 1020 (8th

ABC.

Cir.1988). In that case, the defendants waited six months before moving to dismiss for lack of personal jurisdiction and venue, and two more months passed before the court held a hearing. *Id.* at 988. During this period, the plaintiffs never approached the court to request discovery concerning the issues raised by the motions. Consequently, the court later declined to delay the lawsuit to allow belated discovery on these issues. *Id.*

¶ 24 We conclude that the trial court did not abuse its discretion in refusing to permit discovery after the ruling on Vogler's motion. Likewise, we decline to delay this lawsuit so that ABC can begin discovery. Like the *Health Care Equalization* defendants, Barnard Vogler moved to dismiss several months after receiving the initial complaint. ABC never requested leave to take discovery on the jurisdictional issue at that time or during the four months the motion remained pending. Throughout these periods, ABC's counsel had access to many of Barnard Vogler's work papers and files and cited those documents extensively in ABC's response. ABC thus effectively signaled that it was prepared to litigate the jurisdictional challenge based on those documents, its affidavits, and the court record. Therefore, we cannot say that the trial court abused its discretion in denying ABC's belated request for discovery. *See id.*

¶ 25 In support of its arguments, ABC relies upon *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir.1972). The jurisdictional issue in *Leasco* hinged on whether one of the foreign defendants aided in procuring Leasco's agreement to a fraudulent contract and thereby engaged in activity directed at the United States. *See id.* at 1340–43. The parties submitted conflicting affidavits on the subject. *Id.* at 1343. Noting the confusion in the record, the Second Circuit decided that the trial court was in no position to dismiss the case. *Id.* at 1343–44. It consequently allowed the plaintiffs to take two depositions to resolve the outstanding issue. *Id.* at 1344 n. 12.

¶ 26 Unlike the *Leasco* court, we are not faced with a conflicting record. The parties do not dispute any of the relevant facts; the conflicts concern only the implications of those facts. Accordingly, we reject ABC's arguments.

## IV. CONCLUSION

¶ 27 We uphold the trial court's dismissal of the First Amended Complaint and its denial of discovery.

CONCURRING: RUDOLPH J. GERBER, Judge, E.G. NOYES, Jr., Judge.

