230 P.3d 365

The **PLANNING GROUP OF SCOTTS-DALE, L.L.C.**, an Arizona limited liability company; and **Altair, L.L.C.**, an Arizona limited liability company, Plaintiffs/Appellants,

v.

**LAKE MATHEWS MINERAL PROPER-TIES, LTD.**, a California limited partnership; **James D. Holmes** and **Jane Doe Holmes**, husband and wife; **Shirley Smith** and **John Doe Smith**, wife and husband; **Randy Evers** and **Jane Doe Evers**, husband and wife; **Integrated Resources, Inc.**, a California Corporation, Defendants/Appellees.

No. 1 CA–CV 09–0224.

Court of Appeals of Arizona, Division 1, Department C.

May 6, 2010.

---

Lewis and Roca LLP by George L. Paul, Thomas J. Morgan, Stefan M. Palys, Phoenix, Attorneys for Plaintiffs/Appellants.

Sherman & Howard L.L.C. by Daniel P. Beeks, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

KESSLER, Judge.

¶1 This appeal presents the question whether Arizona has specific personal jurisdiction over California nonresident Defendant Lake Mathews Mineral Properties, LTD ("LMMP") and several related individuals and entities living or acting in California (collectively "Nonresident Defendants"). LMMP entered into an agreement to have The Planning Group of Scottsdale, L.L.C. ("TPG") and Altair, L.L.C. ("Altair") (collectively "Plaintiffs"), both located in Arizona, fund a mining project in California. The Nonresident Defendants' only contacts with Arizona were that: (1) An already existing report related to the mining operation was delivered to the Plaintiffs by an Arizona resident at that resident's suggestion because he was a relative of one of the Nonresident Defendants; (2) Money was sent from Arizona to California; and (3) There were interstate communications between the parties. Plaintiffs sued the Nonresident Defendants in Arizona alleging both breach of contract and securities fraud. Applying the purposeful availment test, we affirm the superior court's dismissal of the complaint against the Nonresident Defendants for lack of personal jurisdiction.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

### A. The Parties

¶2 TPG and Altair made investments in various securities and TPG also sold insurance. Both companies are owned by Reid Johnson ("Johnson"). Jeffery Clark ("Clark") is an employee of both TPG and Altair. Both Johnson and Clark are the managers of Altair.

¶3 LMMP is a California company owning mining rights under and adjacent to Lake Mathews in California. Nonresident Defendant James D. Holmes ("Holmes") is the general partner of LMMP. Nonresident Defendant Shirley Smith ("Smith") is LMMP's California attorney who represented the company on a straight contingency in return for a stated percentage of its profits. Nonresident Defendant Randy Evers ("Evers") and his company, Nonresident Defendant Integrated Resources, Inc. ("Integrated"), are engineering consultants for LMMP in California. Defendant Lee Subke ("Subke")[2] is a retired real estate broker living in Arizona who happens to be Smith's brother.

### B. The Incident

¶4 In 2005, Subke met with Clark to discuss a personal life insurance program offered by TPG. During their meeting, Subke learned that, in addition to selling insurance, TPG also invested in outside projects. Consequently, Subke contacted Smith to ask whether LMMP would authorize him to give Clark a copy of its due diligence report ("Report"). Smith relayed the request to Holmes, who responded affirmatively and Subke gave the Report to Clark, suggesting he talk to Smith. It is undisputed that this introduction between the Nonresident Defen-

---

1. We take the following facts from the complaint and attachments to the motion, response and reply relating to the motion to dismiss for lack of personal jurisdiction. On appeal from an order on a motion to dismiss a complaint for lack of personal jurisdiction, we view the facts in the light most favorable to the non-moving party. *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 566, 892 P.2d 1354, 1355 (1995). The nature of our review is not altered by the parties having filed documents outside of the complaint and the superior court having appeared to consider those documents in its ruling. *Bonner v. Minico, Inc.*, 159 Ariz. 246, 254, 766 P.2d 598, 606 (1988) (principles of summary judgment apply to factual issues affecting jurisdiction). *See also Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶7, 953 P.2d 168, 170 (1998) (evidence of party opposing summary judgment is to be believed and all justifi-

able inferences are to be drawn in its favor; appellate review is *de novo* ); *Smith v. CIGNA HealthPlan of Arizona*, 203 Ariz. 173, 176, ¶8, 52 P.3d 205, 208 (App.2002) (court's consideration of matters outside of complaint converts motion to dismiss to motion for summary judgment).

2. Although Lee and Barbara Subke were defendants below, they are not parties to this appeal because they are Arizona residents who did not contest personal jurisdiction. After the superior court entered a judgment pursuant to Arizona Rule of Civil Procedure ("Ariz. R. Civ.P.") 54(b) dismissing the complaint against the Nonresident Defendants, Plaintiffs dismissed their claims against the Subkes without prejudice and entered into a tolling agreement with them.

dants and Plaintiffs was not initiated by the Nonresident Defendants. This ended Subke's involvement in the matter, although one year later LMMP offered Subke a reward for introducing LMMP to Plaintiffs.

¶ 5 During the next few weeks, Clark, Holmes and Smith had several discussions via phone and email regarding Plaintiffs potentially funding LMMP's California mining project. It is unclear who among them made the first communication as the only evidence of record is that the communications were initiated by LMMP, Smith and Plaintiffs. Ultimately, the parties agreed to meet at the Los Angeles International Airport ("LAX") to further discuss the California project's funding. Clark attended on behalf of TPG and Altair and Smith and Holmes attended on behalf of LMMP. After the meeting at LAX, Smith prepared in California a document called "Agreement: Basic Propositions Sufficient for Immediate Funding of the Holmes Project" ("Basic Propositions"). Basic Propositions was executed in California and faxed to Arizona. It provided TPG would fund the mining project with $370,000 by making $100,000 available initially with $90,000 available during each of the following three months. On the first payment, TPG would earn interest at nine percent per year and be entitled to be paid ten percent of the total gross proceeds from the mining project when realized. On the other payments, TPG would earn 3.333 percent of the gross proceeds. LMMP was to bear sole responsibility for management duties and no liability accrued against it if the project failed to yield proceeds.

¶ 6 TPG and Altair sent $100,000 to LMMP in California.[3] Approximately one month later, TPG and Altair wired $90,000 to LMMP. Before TPG and Altair's third payment was due, Plaintiffs' Arizona attorney sent LMMP a "Term Sheet." According to Plaintiffs, the Term Sheet formalized the transaction and terms on which they would be willing to continue to fund the project in even greater amounts. According to Smith, however, the Term Sheet contained new terms departing from Basic Propositions.

LMMP did not agree to the Term Sheet and TPG and Altair refused to make the final two payments. During this period Smith contacted the Plaintiffs and their attorney in Arizona by telephone, email and fax.

¶ 7 In December 2005, LMMP, TPG and Altair had a face-to-face meeting at LAX to discuss possibly resolving the conflict between them. A few days later, Holmes sent a letter to Clark in Arizona outlining several alternatives that were discussed at the LAX meeting.

## C. The Complaint and Trial Court Ruling

¶ 8 Two years later, after the parties were still unable to resolve their differences, TPG and Altair filed a complaint in Maricopa County Superior Court against Nonresident Defendants and Subke. The complaint sought declaratory relief to require the defendants to sign: (1) A note evidencing the Plaintiffs' investment in the project; (2) A deed giving Plaintiffs royalty interests; and (3) Any other documents to memorialize the transaction. Plaintiffs also alleged Nonresident Defendants had breached the contract and sought specific performance or restitution of the amounts paid to Defendants, Defendants were liable for securities fraud, and Defendants should give an accounting of their use of the invested funds and mining operations so Plaintiffs could collect royalties and monitor the mining operations.

¶ 9 Nonresident Defendants moved to dismiss the complaint for lack of personal jurisdiction, arguing Plaintiffs' complaint only alleged general jurisdiction, and that they did not have sufficient contacts with Arizona for general jurisdiction. Plaintiffs moved to amend their complaint to clarify they were alleging specific personal jurisdiction. Oral argument was held on the two motions. The court did not hold an evidentiary hearing, but the Nonresident Defendants and Plaintiffs submitted documents to the court in support of their respective positions. While the court permitted Plaintiffs to amend their complaint to clarify that they were alleging specific jurisdiction, it dismissed all of Plaintiffs' claims against Nonresident Defendants for a

---

**3.** The Basic Propositions provided that TPG would fund the mining operation. It is unclear

why Altair also sent funds to the Nonresident Defendants.

lack of personal jurisdiction and entered a final Rule 54(b) judgment.[4]

¶ 10 Plaintiffs timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes section 12–2101(B) (2003).

## II. DISCUSSION

 ¶ 11 "Once the defendant has moved for dismissal for lack of jurisdiction, the plaintiff has the burden of establishing that jurisdiction is proper." *GT Helicopters, Inc. v. Helicopters, Ltd.*, 135 Ariz. 380, 382, 661 P.2d 230, 232 (App.1983). When there is no evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction and we review the trial court's decision and factual findings *de novo. Uberti*, 181 Ariz. at 569, 892 P.2d at 1358; *Arizona Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, ¶ 8, 224 P.3d 988, 990 (App.2010); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.2008); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.2006). A prima facie showing in this context means evidence sufficient to avoid a directed verdict. *Bohreer v. Erie Ins. Exchange*, 216 Ariz. 208, 211, ¶ 7, 165 P.3d 186, 189 (App.2007). However, plaintiffs cannot " 'simply rest on the bare allegations of the complaint, but [are] rather [required] to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.' " *Macpherson v. Taglione*, 158 Ariz. 309, 311–12, 762 P.2d 596, 598–99 (App.1988) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l., Inc.*, 551 F.2d 784, 787 (9th Cir.1977)).

¶ 12 On appeal, Plaintiffs contend Nonresident Defendants are subject to specific per-

sonal jurisdiction in Arizona because the Nonresident Defendants: (1) Intended to induce Plaintiffs to purchase securities, sent materials and made phone calls and emails to Arizona to induce such purchase and violated Arizona security laws; and (2) Engaged in conduct that caused injury in Arizona.[5]

### A. Specific Personal Jurisdiction[6]

 ¶ 13 Arizona courts may exercise specific personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Uberti*, 181 Ariz. at 569, 892 P.2d at 1358; *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987) (construing prior Ariz. R. Civ. P. 4(e)(2)). The ultimate goal is to determine whether " 'the defendant's conduct and connection with the forum state are sufficient that he should reasonably anticipate being haled into court there.' " *Batton*, 153 Ariz. at 271, 736 P.2d at 5. The minimum contacts inquiry focuses on the relationships between the defendants, the forum and the litigation. *Id.* Due process for specific personal jurisdiction is satisfied if: (1) Defendants performed some act or consummated some transaction with Arizona by which they purposefully availed themselves of the privilege of conducting business in this state; (2) The claim arises out of or results from the defendant's activities related to or contacts with Arizona; and (3) The exercise of jurisdiction would be reasonable. *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 7, 13 P.3d 280, 282 (2000); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir.1997).[7] The parties dispute only the first part of this test.

---

4. Although the superior court provided no explanation for dismissing Plaintiffs' claims against Nonresident Defendants for a lack of personal jurisdiction, we assume that the court based its determination on an analysis of the facts and the parties' allegations in light of the Arizona long-arm rule and due process considerations. *See* Ariz. R. Civ. P. 4.2(a).

5. Plaintiffs also argue that the arrangement between the parties created ongoing relationships and obligations with Arizona residents. However, that argument is simply part and parcel of the purposeful availment test for specific personal jurisdiction so we address it as part of the Plaintiffs' first argument.

6. Both parties concede that the issue on appeal is whether Arizona has specific, not general, jurisdiction over Nonresident Defendants. Thus, we do not consider whether Arizona has general jurisdiction over Nonresident Defendants. A nonresident defendant is subject to general jurisdiction when its contacts with the forum are substantial or continuous and systematic enough that the defendant may be haled into court in the forum even for claims unrelated to the contacts with the forum. *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 6, 13 P.3d 280, 282 (2000).

7. Because Arizona's long-arm rule confers jurisdiction over Nonresident Defendants to the fullest extent permitted by the Due Process Clause, *see* Ariz. R. Civ. P. 4.2(a), our ruling on jurisdic-

### 1. Purposeful Availment v. Purposeful Direction

¶ 14 Before turning to Plaintiffs' specific arguments, we must distinguish between two standards under the first part of the test for specific personal jurisdiction: "purposeful availment" and "purposeful direction." The parties dispute which of these standards apply here and, as we discuss below, that difference is a major crux of this appeal. Courts have refined the first element to mean whether the defendant has either: "(1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Boschetto,* 539 F.3d at 1016, 1021; *Pebble Beach Co.,* 453 F.3d at 1155, *quoting Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004); *see also Uberti,* 181 Ariz. at 570, 892 P.2d at 1359 ("The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.") quoting Asahi Metal Indus. Co v. Super. Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J.) (plurality opinion) (emphasis added); *Batton,* 153 Ariz. at 271, 736 P.2d at 5 (in determining specific jurisdiction, we must determine whether defendant purposefully created contacts with Arizona); *Cohen v. Barnard, Vogler & Co.,* 199 Ariz. 16, 18, ¶ 9, 13 P.3d 758, 760 (App.2000) (contact for specific jurisdiction to exist is whether defendant purposefully directed activities at Arizona residents or purposefully created contacts with Arizona); *Rollin v. William V. Frankel & Co., Inc.,* 196 Ariz. 350, 354, ¶ 13, 996 P.2d 1254, 1258 (App.2000) (holding defendant must also have *purposefully* directed his conduct or activities at the forum state) (citation omitted).

¶ 15 While courts sometimes use the phrase "purposeful availment" to include "purposeful direction," they are two distinct concepts. *Boschetto,* 539 F.3d at 1016; *Pebble Beach Co.,* 453 F.3d at 1155 (citation omitted). Cases that sound "primarily in contract" are generally analyzed under the purposeful availment standard, requiring courts to determine whether a defendant purposefully availed itself of the privilege of conducting business or consummating a transaction in the forum. *Boschetto,* 539 F.3d at 1016 (citation omitted); *Schwarzenegger,* 374 F.3d at 797. *Accord Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991) (purposeful availment test used in contract actions and purposeful direction test used in tort actions). For example, executing or performing a contract in the forum state is evidence of purposeful availment. *Schwarzenegger,* 374 F.3d at 802. As the court explained in *Boschetto,* 539 F.3d at 1016, to have purposefully availed itself of doing business in a state, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state'" (citation omitted). By taking such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). We take a practical approach to this test, examining the qualitative evidence of the defendant's conduct with the state, so that the mere formation of a contract with a resident of the forum is not, standing alone, sufficient to create jurisdiction. *Boschetto,* 539 F.3d at 1017 (citation omitted). This standard ensures defendants "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citations omitted). *Accord Batton,* 153 Ariz. at 271, 736 P.2d at 5. Consequently, jurisdiction is only proper if the defendants may reasonably anticipate that their conduct and connection with Arizona may subject them to its jurisdiction. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

¶ 16 In contrast, purposeful direction analysis is applied to torts involving actions taking place outside the forum that

tion hinges on federal law. *Uberti,* 181 Ariz. at 569, 892 P.2d at 1358.

are directed at the forum. *Schwarzenegger,* 374 F.3d at 802. To illustrate, distributing goods in the forum state that originated elsewhere is an example of purposeful direction. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Schwarzenegger,* 374 F.3d at 802. Courts apply an effects test to determine whether a defendant purposefully directed its activities at the forum state in which the defendant's actions were felt. *Keeton,* 465 U.S. at 780, 104 S.Ct. 1473 (*citing Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). For this test, a defendant must have committed an act outside the forum state directed at the forum such as the distribution in the forum of goods originating elsewhere. *Schwarzenegger,* 374 F.3d at 803. In those cases, we apply a three-part "effects" test to see if the defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, [and](3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002)). Mere foreseeability of an injury or event occurring in another state is not sufficient. *Batton,* 153 Ariz. at 271, 736 P.2d at 5 (citing *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174).

■■■ ¶ 17 Plaintiffs argue this appeal is subject to purposeful direction analysis based on the sale of securities. Relying on two prior sales of securities cases, their argument is that the Nonresident Defendants directed their conduct at Arizona citizens and the harm occurred in Arizona. Plaintiffs also argue that only their breach of contract claim is subject to purposeful availment analysis. Plaintiffs contend that their remaining three counts, the declaratory judgment claim, securities fraud claim and request for an accounting, are torts and should be analyzed under purposeful direction.

¶ 18 We disagree with Plaintiffs for two reasons.[8] First, an analysis of their com-plaint shows that three of the four counts sound in contract. Plaintiffs alleged that the defendants breached the contract, asked for a declaratory judgment requiring the defendants to sign a note and give Plaintiffs a deed to the royalty interests and asked for an accounting based on the contract. Only one claim, that alleging the defendants were liable for securities fraud, can be said to sound in tort.

¶ 19 Second, when complaints contain both tort and contract claims, we look to see which claims predominate or the substance rather than the form of the complaint's allegations. Thus, in *Boschetto,* the plaintiff buyer sued a seller of an automobile located in a different state who had advertised and sold the car on eBay. Plaintiff alleged four counts, violation of the state consumer protection act, misrepresentation, fraud and breach of contract. The Ninth Circuit engaged in purposeful availment analysis even though defendants asserted claims for violation of consumer protection laws, misrepresentation and fraud. *Boschetto,* 539 F.3d at 1016 ("[W]e have typically analyzed cases that sound primarily in contract … under a 'purposeful availment' standard."). In *Meyers v. Hamilton Corp.,* 143 Ariz. 249, 251–52, 693 P.2d 904, 906–07 (1984), our supreme court held that in determining personal jurisdiction, we should not look at the phrasing of the complaint in tort or contract, but the substance of the complaint. In *Meyers,* a company providing cruises sold tickets to Arizona residents through a travel agent in Arizona. The tickets were purchased in Arizona and all the necessary documents were then sent to the Arizona agent who delivered them to the plaintiffs in return for a commission. The plaintiffs sued the nonresident defendant for negligence or willful actions, alleging the defendant had not delivered their luggage to the ship. The defendant argued that the action sounded in tort and under the previous long-arm rule requiring that an effect occur in Arizona,[9] no tortious injury or event

---

8. We discuss Plaintiffs' reliance on the two securities cases in the next section of this decision.

9. Under the then-existing long-arm rule, Ariz. R. Civ. P. 4(e)(2), service was authorized when a defendant "which has caused an event to occur in this state out of which the claim which is the subject of the complaint arose." Analysis of whether an event occurred in Arizona for due process purposes was unnecessary because the prior rule was interpreted to extend long-arm jurisdiction to the full extent permitted by due process. *Batton,* 153 Ariz. at 270, 736 P.2d at 4.

occurred in Arizona. Our supreme court rejected that argument, holding that the complaint was founded on a contract regardless of whether the remedy sought was in tort because the essence of the claimed breach was a failure of consideration and the breach was coextensive with the reach of the underlying contract.[10] *Id.* at 251–52, 693 P.2d at 906–07.

¶ 20 Plaintiffs contend that *Boschetto* does not apply here because that case involved a breach of express warranty claim under the UCC, which required viewing the case as sounding in contract. They also point to *Budget Blinds, Inc. v. White,* 536 F.3d 244, 261–65 (3d Cir.2008), in which the court applied the purposeful availment test to a breach of contract claim and the purposeful direction test to the trademark claims.

■■■ ¶ 21 We reject those arguments. As *Boschetto* and *Meyers* teach, we look to the substance of the claims and if the substance of the claims predominates in contract or the tort claim is coextensive with the underlying contract, we should apply the purposeful availment test. Nor does *Budget Blinds* affect our conclusion. While the court in *Budget Blinds* did apply different tests to different types of claims, none of the trademark claims were based on the underlying agreement between the parties. Rather, the plaintiff and defendant had settled various trademark infringement claims. The plaintiff later sued when it claimed the defendant had breached the settlement agreement, bringing claims both for breach of contract and trademark infringement. *Id.* at 249. The basis of the trademark claim was not tied to the settlement, but was based on independent actions by the defendant. *Id.* at 263–65. Here, in contrast, the very basis of the securities fraud claim is the contract between the parties. As the court explained in *Meyers,* we look not to the formal title of the cause of action, but its substance. When the substance of the claim is coextensive with the contract, we should apply the purposeful availment analysis. 143 Ariz. at 251–52, 693 P.2d at 906–07. Even though Plaintiffs' com-

plaint contained a tort claim, it sounded primarily in contract because Plaintiffs filed suit to collect on interests outlined in Basic Propositions. *Schwarzenegger,* 374 F.3d at 802. Thus, purposeful availment analysis is warranted.

**B. Nonresident Defendants' Conduct Did Not Establish Purposeful Availment**

■■■ ¶ 22 Plaintiffs argue that because the Nonresident Defendants sent materials to them in Arizona, had interstate communications with them and payments were sent from Arizona, the Nonresident Defendants availed themselves of doing business in Arizona. We disagree and hold that on this record the Nonresident Defendants did not purposefully avail themselves of doing business in Arizona.

■■■ ¶ 23 As the United States Supreme Court explained in *Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174, the mere existence of a contract is not by itself sufficient to confer specific personal jurisdiction. Rather, there must be other qualitative facts relating to the negotiations, terms of the contract, the parties' actual course of dealing and contemplated future consequences before a defendant can be said to have availed itself of the privilege of doing business in the forum state. *Id.* at 479, 105 S.Ct. 2174; *see also Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir.2001) ("[A]n individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts to support personal jurisdiction.") (internal quotation marks and citations omitted). As part of that analysis we look to where performance of the underlying agreement was to take place. *Roth,* 942 F.2d at 621–22.

**1. Negotiations**

¶ 24 Plaintiffs argue that although Nonresident Defendants never set foot in Arizona, the parties exchanged a series of telephone calls, emails, letters and facsimiles, which

---

10. While the court in *Meyers* held that personal jurisdiction existed, it did so because the money changed hands in Arizona, the defendant had

advertised in Arizona and had delivered the tickets in Arizona. *Id.* at 253, 693 P.2d at 908. No similar facts are present here.

establish personal jurisdiction.[11] Although Plaintiffs attach significance to these contacts, such contacts alone are not sufficient to establish that Nonresident Defendants purposefully availed themselves of the privilege of conducting business in Arizona. *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 395 (7th Cir.1994) (holding that making a telephone call into the forum state is an insufficient basis for jurisdiction). *Accord Roth*, 942 F.2d at 622. Unlike *Burger King*, in which the defendant actively sought negotiations with a company in the forum state, 471 U.S. at 479, 105 S.Ct. 2174, the initial contact with Arizona by Nonresident Defendants was sending some information to Subke at his request, and the following negotiations occurred in California. *See Budget Blinds*, 536 F.3d at 261 (finding little significance to location of prior negotiations because defendants in nonforum state did not negotiate with plaintiff in forum state until plaintiff had threatened litigation).

## 2. Terms of Contract and Course of Dealing

¶ 25 Nonresident Defendants accepting $100,000 and $90,000 sent from Arizona for the mining project is not sufficient to establish purposeful availment because they did not deliberately create a substantial connection with Arizona. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990) (finding the collection of payments via checks drawn in California is not sufficient to support personal jurisdiction over the defendants in California).

¶ 26 Further, in the "parties' actual course of dealing," *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174, there is no evidence that Nonresident Defendants were availing themselves of any significant Arizona privilege. Instead, there is evidence indicating Nonresident Defendants were seeking to conduct business in California with Plaintiffs. For example, Plaintiffs asked to meet Nonresident Defendants and the parties met at LAX to further discuss the mining project's funding. As a result of the parties' discussions

and negotiations at LAX, Smith drafted Basic Propositions in California outlining Plaintiffs' agreement to fund LMMP to conduct exploratory drilling under and adjacent to Lake Mathews in California. That agreement was also executed in California.

¶ 27 Most importantly, the performance of the underlying mining agreement was to take place in California. While Plaintiffs wired funds to California for Nonresident Defendants' use in the mining project in accordance with Basic Propositions, these actions were insufficient to confer personal jurisdiction over the Nonresident Defendants in Arizona when the underlying contract was to be performed elsewhere. In analyzing interstate transactions in which there were only tangential contacts with the forum, such as payments to the forum state, we place special emphasis on where the underlying transaction was to be performed. *See* ROBERT C. CASAD & WILLIAM B. RICHMAN, JURISDICTION IN CIVIL ACTIONS ("CASAD") § 4–2, 425–27 (3d ed.1998) (most courts "consider the execution and delivery of the note to be part of a larger transaction and take the characteristics of that larger transaction into account in deciding whether the defendant was transacting business for purposes of the suit on the note."). *See also Command–Aire Corp. v. Ontario Mechanical Sales and Service Inc.*, 963 F.2d 90, 94 (5th Cir.1992) (citations omitted) (payment of funds to person in the forum is given little weight in personal jurisdiction analysis).

¶ 28 An example of such analysis is found in *Roth*, in which a California movie producer contacted the famed novelist Gabriel Garcia Marquez in Mexico City to obtain movie rights to one of his novels. Negotiations occurred in Havana, Mexico City, Barcelona and to a very limited degree in California. 942 F.2d at 621–22. While the plaintiff thought he had reached an agreement, Garcia Marquez and his agent in Barcelona disagreed. Roth brought a declaratory judgment action in California to determine his

---

**11.** Plaintiffs do not argue that Arizona had personal jurisdiction over any of the Nonresident Defendants other than LMMP because of their independent contacts with Arizona, but only because their relationship with LMMP and LMMP's

alleged contacts with Arizona. We do not address these arguments because we hold that LMMP's conduct was insufficient to confer personal jurisdiction over it in Arizona.

rights. *Id.* The district court found that there was specific jurisdiction in California. In affirming, the Ninth Circuit applied the purposeful availment test and held that while this was a very close case and most of the negotiations occurred outside California, the focus of the performance would be in California where the movie, if produced, would be edited, produced and advertised. *Id.* at 621–22.

¶ 29 In contrast to *Roth,* specific jurisdiction in Arizona in this case is lacking. Not only did all of the negotiations except for various phone calls and emails occur in California, but more importantly, California was the focus of performance of the underlying mining operation from which Plaintiffs were to profit.

¶ 30 In reaching this conclusion, we distinguish *Rollins v. Vidmar,* 147 Ariz. 494, 711 P.2d 633 (App.1985). In *Rollins,* the Arizona plaintiff's daughter, who lived with her husband in California, contacted plaintiff and asked to borrow money to help the couple purchase a house in California. Plaintiff withdrew funds from her Arizona savings account and sent them to California. Plaintiff received several loan repayments in Arizona prior to the payments ceasing when the daughter and her husband filed for divorce in California. Plaintiff brought a breach of contract action in Arizona, which was dismissed for lack of personal jurisdiction. *Id.* at 495, 711 P.2d at 634. In reversing, this Court held that the contract was made in Arizona because the money was solicited from Arizona, came from Arizona and repayment was made to plaintiff in Arizona. *Id.* at 495–96, 711 P.2d at 634–35. Without citing to *Burger King,* the court concluded that the defendant had reasonable notice that if litigation was needed, it would well be expected to take place in Arizona so that defendants purposefully availed themselves of the privilege of conducting activities within Arizona. *Id.* at 496–97, 711 P.2d at 635–36. *Rollins* failed to consider *Burger King's* clarification of the purposeful availment test and, unlike the facts here, the obligation to repay the plaintiff was independent of the value or sale of the house. Here, the entire contract was based on extensive mining operations in California with repayment premised on profits from those activities.[12] *See also Command–Aire,* 963 F.2d at 94 (payment of funds into the forum is given little weight in personal jurisdiction analysis).

### 3. Ongoing Relationships/Future Consequences

¶ 31 We also look to whether the transaction resulted in an ongoing and continuous relationship between the parties sufficient to confer personal jurisdiction over the Nonresident Defendants. *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174. Plaintiffs argue Nonresident Defendants are subject to personal jurisdiction in Arizona because they entered into an ongoing relationship with the forum. Plaintiffs assert the money loaned under Basic Propositions created an obligation for Nonresident Defendants to engage in mining while paying Plaintiffs royalties on the proceeds.

¶ 32 We disagree. First, the mere negotiation and execution of a contract are insufficient to create an ongoing and continuing obligation so as to satisfy personal jurisdiction in a forum when the focus of the

---

12. We also distinguish *Macpherson v. Taglione,* 158 Ariz. 309, 762 P.2d 596 (App.1988), for similar reasons. In *Macpherson,* a seller of rare coins soliciting business nationally contacted an Arizona resident in Arizona seeking to have him purchase some coins. The resident purchased the coins and they were delivered with guarantees of value to the plaintiff in both Arizona and Michigan. Plaintiff sued the seller for fraud and breach of contract, contending the coins were inferior to the grade stated and the defendant had refused to honor the guarantee. *Id.* at 310, 762 P.2d at 597. This Court held that Arizona had specific jurisdiction over the defendant company and one of its officers because the company solicited business nationally, had solicited business in Arizona and had delivered the coins in Arizona, thus directing its activities at Arizona residents. *Id.* at 312, 762 P.2d at 599. The focus of the contract was on the interstate sale of coins delivered to Arizona. Here, the focus of the contract was on mining operations in California, with Plaintiffs' interest being any profit from those operations. Moreover, the court in *Macpherson* did not attempt to distinguish between purposeful availment and purposeful direction; that decision cannot be cited for application of the purposeful direction test in contract actions because it did not address that distinction.

performance is not in the forum. *Roth,* 942 F.2d at 621 (personal jurisdiction in California is proper because the contract was actually to be performed in the state); *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* 700 F.2d 1026 (5th Cir.1983) (finding no personal jurisdiction in Texas because defendants did not perform their obligations under the agreement in the state); *St. Martin & Mahoney, A.P.L.C. v. Diversified Aircraft Holdings, Ltd.,* 934 F.Supp. 200, 205 (E.D.La.1996) (holding that although the parties executed a contract, "one of the most pivotal considerations in determining whether there has been 'purposeful availment' is where the material performance of the contract was centered.").

¶ 33 Second, although the Nonresident Defendants accepted funds from Arizona, these proceeds were to be used by the Nonresident Defendants to perform mining duties in California. *Roth,* 942 F.2d at 622 (holding "[t]he checks ... which appellees attempt to minimize, would have depended upon activities in California...."); *Hydrokinetics,* 700 F.2d at 1029. Additionally, the Nonresident Defendants' obligation to repay hinged on any royalty proceeds produced as a result of the mining in California. Although Basic Propositions required Nonresident Defendants to send royalties to Plaintiffs in Arizona, this is insufficient to establish personal jurisdiction in the state. Thus, in order to receive funds, Plaintiffs were dependent upon the mining performed in California. *Roth,* 942 F.2d at 622.

¶ 34 Plaintiffs' reliance on *Mellon Bank (East) PSFS, N.A. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) is misplaced.[13] In *Mellon,* three New York residents who were limited partners in Virginia partnerships contacted a Pennsylvania bank to obtain financing for real estate development in Virginia. 960 F.2d at 1219–20. To obtain financing and later extensions, they or their broker sent personal financial documents to

Pennsylvania for the bank to review. *Id.* Apparently some negotiations of the loan documents occurred in Pennsylvania. *Id.* at 1223. When the defendants defaulted on the loan and guaranty agreements, the bank sued them in Pennsylvania. While the Third Circuit Court of Appeals considered the case to be close, it held there was specific personal jurisdiction in Pennsylvania because some negotiations had occurred in that state, defendants had sought out the Pennsylvania bank and all payments and correspondence were to be sent there. *Id.* at 1223. *See also Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co.,* 75 F.3d 147, 152 (3d Cir.1996) (distinguishing *Mellon Bank* on basis that defendants had solicited contract or initiated business relationship leading to contract in *Mellon Bank* ). Here, no negotiations occurred in Arizona and while payments were to be sent here, only some emails, the preliminary report, and the Basic Proposition negotiated and drafted in California were sent to Arizona.

### 4. Sales of Securities

¶ 35 Plaintiffs place special reliance on *Davis v. Metro Prod., Inc.,* 885 F.2d 515 (9th Cir.1989), and *Sullivan v. Metro Prod., Inc.,* 150 Ariz. 573, 724 P.2d 1242 (App.1986), to argue that personal jurisdiction in Arizona is proper.[14] Specifically, Plaintiffs argue personal jurisdiction is proper because Nonresident Defendant Clark established intentional contact with Arizona when he directed Subke, LMMP's alleged agent, to deliver the Report to Plaintiffs.

¶ 36 Both *Sullivan* and *Davis* are distinguishable. The contracts were signed in Arizona and involved an Arizona accountant whom the defendants had solicit tax shelter investors generally. As a result of that conduct, the investors later entered into produc-

---

**13.** Plaintiffs also cite to an unpublished federal court decision. We will not discuss that case. *Walden Books Co. v. Ariz. Dep't of Revenue,* 198 Ariz. 584, 589, ¶ 23, 12 P.3d 809, 814 (App.2000).

**14.** Plaintiffs rely on *Davis* and *Sullivan* to argue that a nonresident selling a security to an Arizona resident is subject to personal jurisdiction in Arizona for claims arising out of that sale.

Although both cases involved securities fraud actions arising out of the sale of tax shelters, the courts in *Davis* and *Sullivan* ruled on personal jurisdiction without determining whether the tax shelters were securities. Consequently, in deciding whether there is personal jurisdiction in Arizona, we need not decide whether Nonresident Defendants sold Plaintiffs a security.

tion service agreements. *Davis,* 885 F.2d at 519; *Sullivan,* 150 Ariz. at 575, 724 P.2d at 1244. The court in *Davis* held that defendants met with the accountant with the intent to induce him to obtain purchasers of the product, which later resulted in six agreements with Arizona residents. 885 F.2d at 522–23. Similarly, the court in *Sullivan* held that there was jurisdiction because, like the parties in *Meyers,* the Sullivans executed their contracts in Arizona, gave their down payment to the defendants' agent in Arizona and the defendants had clearly acted with the intent to have its Arizona agent obtain purchasers in Arizona which resulted in six agreements with Arizona residents. 150 Ariz. at 577, 724 P.2d at 1246.

¶ 37 Here, Subke, without any evidence he acted at the request of the Nonresident Defendants, simply notified Smith that Plaintiffs might be interested in investing in an outside project and asked if Nonresident Defendants might want him to give Plaintiffs the Report. That did not make Subke an agent for Nonresident Defendants. *GTE New Media Serv. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C.Cir.2000) (finding the "'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction.") (citation omitted); *Galgay v. Bulletin Co., Inc.,* 504 F.2d 1062, 1065 (2d Cir. 1974) (holding an agent must act "at the request and for the business purposes of" the principal); *East N.Y. Savings Bank v. Republic Realty Mortgage,* 61 A.D.2d 1001, 402 N.Y.S.2d 639 (1978) (finding a principal must request the performance of activities and the activities must benefit the principal). Unlike *Davis* and *Sullivan,* there is no evidence that before Subke's meeting with TPG, Nonresident Defendants induced him to obtain investors. Instead, Subke merely received authorization from Holmes to deliver the Report to TPG which ended his involvement with the entire transaction or any other transactions with Nonresident Defendants. This is insufficient to subject Nonresident Defendants to personal jurisdiction.

¶ 38 Plaintiffs attempt to avoid this result by arguing that Nonresident Defendants ratified Subke's conduct by later negotiating and entering into an agreement with the Plaintiffs. This mischaracterizes Subke's role. There is no evidence Subke negotiated with the Plaintiffs or attempted to convince them to contract with the Nonresident Defendants. At best, he was just acting as Smith's brother in attempting to bring two parties together by offering to deliver the Report to Plaintiffs. The ultimate alleged agreement between the parties was not a ratification of Subke's delivery of the Report. To argue that he was an agent by ratification would be analogous to characterizing the United States Postal Service as an agent of Nonresident Defendants merely because the Postal Service offered to and did deliver documents from California to Arizona.

**5. Conclusion**

¶ 39 Consequently, even though Nonresident Defendants entered into Basic Propositions with Arizona Plaintiffs, there is no evidence that Nonresident Defendants purposefully availed themselves of the privilege of conducting business in Arizona. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228; *see also* CASAD § 8–1, 185–87 (if none of the operative facts that form the basis of the action occurred in the forum state, jurisdiction likely will not be upheld).

**C. Damage to Arizona Plaintiffs Does Not Establish Personal Jurisdiction**

¶ 40 Plaintiffs alternatively assert that specific personal jurisdiction is proper because Nonresident Defendants allegedly engaged in conduct causing injury in Arizona. Plaintiffs rely on *Calder,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, to argue that even without other contacts, personal jurisdiction in Arizona is proper because the "brunt of the harm" caused by Nonresident Defendants would be suffered in the State. *Calder's* analysis, however, relied on the specific fact that a Florida reporter and editor wrote and published a magazine article impugning the reputation of a California resident. *Id.* at 785–86, 104 S.Ct. 1482. The Court reasoned that defendants' actions did not constitute "mere untargeted negligence" but rather qualified as a tortious activity expressly aimed at California. *Id.* at 789, 104 S.Ct. 1482. Consequently, *Calder* analy-

sis provides that specific jurisdiction requires " 'something more' . . . in addition to a mere foreseeable effect" in the forum state. *Pebble Beach*, 453 F.3d at 1156 (citation omitted); *see also Bils v. Bils*, 200 Ariz. 45, 48, ¶ 12, 22 P.3d 38, 41 (2001) (rejecting the argument that an intentional tort causing harm to Arizona residents will always be sufficient to confer *in personam* jurisdiction on Arizona courts).[15]

¶ 41 Unlike in *Calder*, Plaintiffs fail to show something more. While Plaintiffs may have shown they were damaged in Arizona as a result of Nonresident Defendants' conduct, they failed to produce evidence that the Nonresident Defendants had the requisite minimum contacts with Arizona. *Cohen v. Barnard, Vogler & Co.*, 199 Ariz. 16, 18, ¶ 10, 13 P.3d 758, 760 (App.2000) (finding requisite minimum contacts do not exist when the only nexus with the forum state is the effect of a damage-causing event) (citation omitted). Here, the discussion and negotiations took place in California, and the mining project was located in California.

¶ 42 A case on point is *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir. 1993), cited favorably in *Cohen*, 199 Ariz. at 19, ¶ 12, 13 P.3d at 761. In *Gen. Elec.*, Air Canada had agreed to purchase stock of a company from Gelco Corporation. *Id.* at 1378. Air Canada hired an accounting firm to investigate the company to be acquired and while the accounting firm found irregularities in the target company's financial statements, Air Canada asked Gelco to waive the audit report and accept a certification from the accountants that the company to be acquired had a positive net worth. *Id.* at 1378–79. Gelco agreed and the accounting firm sent the certification to Gelco in Minnesota. *Id.* at 1379. After the completion of the sale, Gelco and General Electric, with whom Gelco had merged, sued the accountants in Minnesota, claiming they had suppressed information about the company's financial status. *Id.* at 1379, n. 5. The plaintiffs claimed the court in Minnesota had per-

sonal jurisdiction over the accounting firm because it had caused an injury to occur in Minnesota where Gelco was located by sending the single report to Gelco in Minnesota. *Id.* at 1387–88. The Eighth Circuit affirmed the dismissal of the claims for lack of specific personal jurisdiction over the accountants. *Id.* at 1388. It held there was no personal jurisdiction because the focal point of the wrongdoing was in Canada, where the acquired company was located, where the firms performed the accounting work and where the purchase and negotiations were primarily performed. *Id.* While the plaintiffs felt the harm's effect in Minnesota, the work was performed in Canada for a Canadian client and the defendants could not reasonably anticipate being haled into a Minnesota court. *Id.*

¶ 43 The same is true here. The focus of the work was the mining operation in California. The only contact Nonresident Defendants had with Arizona was sending the initial Report to Subke in Arizona and various interstate communications concerning the proposed investment. Otherwise, all the negotiations and the agreement occurred in California as did the alleged breach of the contract. While Plaintiffs assert they felt the results of any alleged wrongdoing in Arizona, this is not sufficient to conclude that the Nonresident Defendants reasonably should have anticipated being haled into court in Arizona. Because Plaintiffs merely allege they suffered damage in Arizona, without something more, Nonresident Defendants' due process rights would be violated if they were subject to personal jurisdiction in the State.

### III. CONCLUSION

¶ 44 Plaintiffs failed to establish a *prima facie* case for personal jurisdiction. Accordingly, we affirm the superior court's judgment dismissing all of Plaintiffs' claims against Nonresident Defendants for a lack of personal jurisdiction.

---

**15.** At least one court has held that *Calder* is limited to intentional torts and does not apply to contract matters or untargeted negligence claims. *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir.

2007) (citing to *Calder*, 465 U.S. at 789, 104 S.Ct. 1482). Under this view, the analysis would only be applicable to the alleged violation of Arizona's securities laws.

¶ 45 Acting in our discretion, we deny Nonresident Defendants' request for attorneys' fees under A.R.S. § 12–341.01. For the purposes of this appeal, however, Nonresident Defendants are the prevailing parties and will be awarded costs upon timely compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

CONCURRING: PATRICK IRVINE, Presiding Judge and MICHAEL J. BROWN, Judge.